FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 1 3 2017

JAMES W. McCORMACK, CLERK
By:
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KATELYN WEBB, on behalf of
Herself and all Others Similarly
Situated                                                          PLAINTIFFS

VS.                                   CASE NO: 4:17cv660-JLH

CHELSEA SMITH, Individually
and in her Official Capacity

This case assigned to District Judge ___Holmes___   DEFENDANTS
and to Magistrate Judge ___Kearney___

### CLASS ACTION COMPLAINT

COMES PLAINTIFF, by and through Counsel and for this CLASS ACTION Complaint

states:

### PARTIES AND JURISDICTION

1.      KATELYN WEBB is a resident and citizen of the State of Arkansas, whose

children were seized by Chelsea Smith, a Family Services Worker for the Department of Human

Services, in Grant County, Arkansas in 2017.  Chelsea Smith sued in her official capacity as a

Family Services Worker for the Department of Human Services, as well as her individual

capacity, for her failure to provide the Plaintiff with a prompt post-deprivation hearing in violation

of the Plaintiff and her children's state and federal constitutional rights.  Plaintiff also sues for

Declaratory Judgment that the statutes referenced herein are unconstitutional both facially and

as applied.  Accordingly, this Court has federal question subject matter jurisdiction under 28

U.S.C. §1331, as well as supplemental jurisdiction over Plaintiff's state claims under the

Arkansas Civil Rights Act of 1993 under 28 U.S.C. §1367.  Venue is proper under 28 U.S.C.

§1391.  All actions were taken under color of state law.

### GENERAL ALLEGATIONS OF FACTS

2.      Plaintiff has two children and is a fit mother.

3. On Wednesday June 28th, 2017, the presiding juvenile judge over a truancy case jailed Katelyn for 5 days, and the children were seized and taken into state custody by DCFS, because Plaintiff was jailed.

4. A.C.A. § 12-18-1001 provides: Protective custody generally....

(b) However, custody shall not exceed seventy-two (72) hours except in the event that the expiration of seventy-two (72) hours falls on a weekend or holiday, in which case custody may be extended to the end of the next business day following the weekend or holiday.

To the extent this statute allows more than 72 hours, said statute is unconstitutional.

5. According to the law as written, even with the weekend, the ex-parte order must have been filed by close of business Monday July 3rd, 2017.  The Order was not timely filed by the Defendant.

6.  The petition wasn't filed until Wednesday July 5th, 2017 and Plaintiff had been released from jail on Monday, July 3rd, 2017,

7.  On July, 5, 2017, Defendant caused to be filed an Emergency Petition alleging that Katelyn was incarcerated and falsely alleging no appropriate relative or friend was willing or able to provide or care for the children.

8. On Wednesday, July 5th, 2017, the same juvenile trial court, based upon the false allegations contained within the petition and supporting affidavit, entered an Ex-Parte order of custody 7 days after the children were taken into DCFS custody, which is also outside of the statutory time-frame.  The court also set a probable cause hearing for July 12th, which is another 7 days post ex-parte order.  Such delay is inadequate post-deprivation relief for a parent whose child has been seized.

9. Allowing five (5) business days' time within which to convene a post-deprivation hearing is unconstitutional, and Plaintiff seeks Declaratory Judgment that the statute is unconstitutional because it fails to provide for a prompt post-deprivation hearing.

10. A.C.A. §9-27-314 (b) states: The emergency order shall include:

   (1) Notice to all defendants and respondents named in the petition of the right to a hearing and that a hearing will be held within five (5) business days of the issuance of the ex parte order.

Allowing 5 days is unconstitutional.

11. Despite this unconstitutional delay, the hearing was cancelled by a text from caseworker Chelsea Smith. See Exhibit "A."

12. Therefore, the Probable Cause hearing was reset by court to July 20th.

13. Plaintiff appeared, and the trial court intended to hold the hearing and attempted to appoint Greg Crain as her lawyer, but Plaintiff advised the Court that she had a lawyer.

14. Therefore, the trial court continued the hearing again, which was re-set for the 26th of July.

15. The trial court found probable cause at the time of removal, but no probable cause for a dependency case.  So, custody of the kids was restored to the Plaintiff.  Had Defendant performed her job in a constitutional manner, Plaintiff would not have been deprived of her relationship with her children.

16. The trial court ordered protective services case opened, but no services were provided because none were needed.  So, Plaintiff and her minor children were deprived of familial association without cause.

17. On September 13th, 2017, a review hearing was held. Plaintiff appeared, and case was dismissed.  Thus, Plaintiff was deprived of custody of her children for no good reason.

18. Based upon the statutory timeframes and disregard for families' rights under the constitution it is alleged that hundreds of children have been seized unnecessarily and the parents deprived of adequate post-deprivation relief.

# I.  CLASS ALLEGATIONS

19.     As matter of official policy or custom, Defendant routinely seizes the children of Arkansas Residents and Citizens, and holds them for more than 72 hours without making sure the Court is notified.

20.     Hundreds of citizens and their children have been subjected to this practice within the past three years.  Due process requires a prompt post-deprivation hearing.  Swipies v. Kofka, 419 F.3d 709, 2005 U.S. App. LEXIS 16861.  Defendant therefore violated Plaintiff's state and federal procedural and substantive Due Process rights.

21.     Despite warning, Defendant's employer refuses to ensure that this State's Citizens receive a prompt judicial appearance, in effect creating a Star Chamber.

22.     Defendant is responsible for ensuring citizens like Plaintiff receive a prompt judicial appearance, after their children are seized.

23.     However, the policy, custom, and training of DHS, allows Defendant to do exactly what happened in this case.  See Transcript of hearing attached as Exhibit "B."

24.     A timely hearing would have prevented the extended infringement on Plaintiffs' familial rights and the resulting damage.

## COUNT I- CLASS ALLEGATIONS

25.     Plaintiff realleges the foregoing against Defendant in her official capacity as if fully set out herein.

26.     Plaintiff and the Class are guaranteed due process of law pursuant to the Fourteenth Amendment to the United States Constitution. The Fourteenth Amendment provides, in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, sec. 1. Plaintiff and the Class bring claims for violations of both substantive and procedural due process.

27.     Substantive due process rights are those rights which are "fundamental" under the Constitution. The United States Supreme Court has recognized a "fundamental liberty interest of natural parents in the care, custody, and management of their child" protected by the Fourteenth Amendment. Miller v. City of Philadelphia, 174 F.3d 368, 374 (3d Cir. 1999)(quoting Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-1395, 71 L.Ed.2d 599, 606 (1982)).

28.     "The touchstone of due process is the protection of the individual against arbitrary action of government." Miller, 174 F.3d at 374 (internal quotations omitted). To incur liability, the objective character of the government action must be so egregious that it "shocks the conscience". Miller, 174 F.3d at 375.

29.     Specifically, the Third Circuit has held that child welfare workers abridge an individual's substantive due process rights where their actions "exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" Miller, 174 F.3d at 375-376. The Third Circuit, in explaining Miller, held that in order for a child welfare worker to be liable for removing a child from his parents upon suspicions of abuse, the worker must have "consciously disregarded a great risk that there had been no abuse." Ziccardi v. City of Philadelphia, 288 F.3d 57, 66 (3d Cir. 2002). Here, once Plaintiff was discharged from jail, there was no evidence that Plaintiff was unfit, and Defendant consciously disregarded a great risk that there had been no abuse.

30.     To state a Section 1983 claim for deprivation of procedural due process, plaintiff must allege that: (1) they were deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty or property; and (2) the procedures available did not provide due process of law.   To state a Section 1983 claim for deprivation of procedural due process, plaintiffs must allege that: (1) they were deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty or property; and (2) the procedures available did not provide due process of law. Alvin v. Suzuki, 227 F.3d 107, 116

(3d Cir. 2000). Regarding the first requirement, as discussed above, parents have a constitutionally cognizable liberty interest in the care, custody, and management of their children. Miller, 174 F.3d at 374.   Regarding the procedures available, "the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Id. at 373 (internal quotations omitted).

31.   Regarding the first requirement, as discussed above, parents have a constitutionally cognizable liberty interest in the care, custody, and management of their children. Miller, 174 F.3d at 374. Regarding the procedures available, "the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Id. at 373 (internal quotations omitted).  Plaintiff and the Class have been denied the opportunity to be heard at a meaningful time and in a meaningful manner, and there is no adequate remedy at law because the state statutes are unconstitutional to the extent they allow more than 72 hours for a post-deprivation hearing.

32.   Defendant in her official capacity had a duty to ensure that Plaintiff received a prompt post-deprivation hearing within 3 days.  But she failed.  It was within her power to provide Plaintiff a prompt post-deprivation hearing, but she failed.

33.   The class consists of all persons, who have suffered the seizure of a child in Arkansas within three years prior to the filing of this lawsuit by the Defendant in her official capacity and by any other worker within this agency following the policies and procedures that lead to Plaintiff's deprivation. Plaintiff's claims are typical of the class and there are common issues of fact.

34.   These issues include, but are not limited to whether Defendant's agency, and Defendant in her official capacity, has a policy or custom that has lead to the deprivation of the state and federal constitutional rights guaranteed to the Plaintiff and the class.

35.   A class action is a superior means of adjudicating this controversy.   Indeed, common issues of fact and questions of law predominate over individual issues.   Such actions occur in this State every day and are capable of repetition yet evading review.

36.   Plaintiff and her counsel are competent to represent the class.   She seeks certification under Rule 23 (b)(1), (b)(2), and (b)(3), as the evidence may allow.

37.    Plaintiff seeks a per diem on behalf of herself and the Class, as well.

38.   Plaintiff seeks Declaratory Judgement that any statute that allows more than three days for a post-seizure hearing and allows for less than a clear and convincing standard is unconstitutional and injunction requiring the Defendant to provide a post-deprivation hearing within 72 hours of seizure.

39.   Plaintiff seeks appropriate injunctive relief requiring the Defendant and her agency to provide Plaintiff and the Class Members a post-deprivation hearing within 3 days after children are seized.

### COUNT II- INDIVIDUAL RELIEF

40.   Plaintiff realleges paragraphs 1-26 against Chelsea Smith in her individual capacity if fully set out herein.

41.   The law requiring a prompt post-deprivation hearing was clearly established by Santosky v. Kramer, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599, 1982 U.S. LEXIS 89, 50 U.S.L.W. 4333.

42.   Qualified immunity applies to all public officials and must be analyzed in light of the circumstances of each particular case. Qualified immunity protects government officials from insubstantial claims in order to "shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565, 573 (2009).

43.   In resolving a claim for qualified immunity, a court must decide: (1) whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right; and (2) whether the

right at issue was clearly established at the time of defendant's alleged misconduct. Pearson, 555 U.S. at 232, 129 S.Ct. at 815-816, 172 L.Ed.2d at 573. A court may address either of these prongs first, based on the particular circumstances of the case at hand. Pearson, 555 U.S. at 236, 129 S.Ct. at 818, 172 L.Ed.2d at 576.

44.     The constitutional right at issue is "clearly established" where the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Wilson v. Layne, 526 U.S. 603, 614-615, 119 S.Ct. 1692, 1699, 143 L.Ed.2d 818, 830 (1999) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531 (1987)). A court must consider the state of the existing law at the time of the alleged violation and the circumstances confronting the official to determine whether a reasonable state actor could have believed his conduct was lawful.

45.     The right to parent one's child is a fundamental right.  In Brown v. Daniels, 128 Fed.Appx. 910 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit held that a post-deprivation hearing held seven weeks after the child was taken into custody, instead of 72 hours, made out a prima facie claim for a procedural due process violation. Further, the Third Circuit held that the child services caseworker was not entitled to qualified immunity because "a reasonable [children and youth services] employee could not have believed that a post-deprivation hearing conducted seven weeks after the removal of a child from his parents' home complied with due process." Brown, 128 Fed.Appx. at 916.  The 8th Circuit has held in a similar manner.  Swipies v. Kofka, 419 F.3d 709, 2005 U.S. App. LEXIS 16861.  Thus, Plaintiff had a clearly established right to parent her child and was entitled to a relationship with her children without interference by the State without reasonable suspicion that the child is endangered.

46.     Plaintiff and her children have experienced severe mental and emotional distress such that Plaintiff pleads for appropriate compensatory and punitive damages against Defendant in her individual capacity, as well as punitive damages for the egregious violation of Plaintiff's Due Process Rights

WHEREFORE Plaintiff prays for an Order certifying the class described above, for appropriate compensatory and punitive damages, for a trial by jury, for appropriate declaratory judgment as requested above and injunctive relief requiring the Defendants to provide Plaintiff and the class with a prompt post deprivation hearing, for reasonable attorney's fees, for costs, and for all other proper relief.

Respectfully submitted,

SUTTER & GILLHAM, P.L.L.C.
Attorneys at Law
P.O. Box 2012
Benton, AR 72018
501-315-1910  Office
501-315-1916  Facsimile
Attorney for the Plaintiff

By:      /s/ Luther Oneal Sutter
Luther Oneal Sutter, AR Bar No. 95031
luthersutter@yahoo.com



**Or tell me what's go in on**
1:30 PM



**Can I go see them**
1:34 PM



Tue, 07/11/2017



**Hey Katelyn! I just got word that judge William cancel court for everyone tomorrow. When he give us a new date I will contact you.**
11:25 AM



**Let me know you recieved this**
11:26 AM

Enter message



**EXHIBIT "A"**

**IN THE CIRCUIT COURT OF GRANT COUNTY, ARKANSAS**
**JUVENILE DIVISION**

STATE OF ARKANSAS,                                          PLAINTIFF

NO. JV-2016-94-1

DAYZHAH SMITH,                                              DEFENDANT

KATELYN WEBB,                                                   MOTHER

**TABLE OF CONTENTS**

Hearing held September 7, 2016 ..................... page    1

Hearing held October 5, 2016 .......................       5

Hearing held February 1, 2017 .....................       21

Hearing held February 15, 2017 ....................       24

Hearing held April 5, 2017 ........................       28

Hearing held May 10, 2017 .........................       31

Hearing held June 28, 2017 ........................       46

Hearing held September 20, 2017 ...................       56

Exhibit B  page1 of 61

**IN THE CIRCUIT COURT OF GRANT COUNTY, ARKANSAS**
**JUVENILE DIVISION**

STATE OF ARKANSAS,                                          PLAINTIFF

NO. JV-2016-94-1

DAYZHAH SMITH,                                             DEFENDANT

KATELYN WEBB,                                                 MOTHER

**RECORD OF HEARING**

    **BE IT REMEMBERED**, that on the 7th day of September, 2016, the above-styled cause came on for hearing before the Honorable Chris E Williams, Circuit Judge of the Seventh Judicial Circuit of the State of Arkansas, at Sheridan, Grant County, Arkansas, with the following appearances made, and;

    THEREUPON, Proceedings were had and done as follows:

**APPEARANCES**

**On Behalf of the Plaintiff:**

    **MR. NORMAN FRISBY**
    Deputy Prosecuting Attorney
    101 W. Pine St., Ste 2
    Sheridan, Arkansas 72150

**On Behalf of Defendant:**

    **Pro Se**

**On Behalf of Mother:**

    **Pro se**

**Court Reporter:**
    **Leca Ledbetter, CCR No. 527**

**P R O C E E D I N G S**

1
2  **THE COURT:** State of Arkansas versus Dayzhah
3  Smith, 27JV-16-94.
4  **MOTHER:** Good morning.
5  **THE COURT:** Good morning.  Did you wake up this
6  morning?
7  **MOTHER:** Shy.
8  **THE COURT:** All right.  Do you waive your right to
9  counsel for her, Ms. Webb?
10  **MOTHER:** Yes, sir.
11  **THE COURT:** She is before the Court on truancy.
12  The allegations are that she's failed to attend
13  school, and the State has then in turn filed a action
14  alleging that she is truant under the law and that she
15  has an obligation and responsibility to attend school
16  based upon the compulsory school attendance law of the
17  State of Arkansas.  Do you understand?
18  **MOTHER:** Yes, sir.
19  **THE COURT:** All right.  And as to the allegation
20  raised in the FINS petition for truancy it's alleged
21  that Dayzhah has missed 12 unexcused absences during
22  2015 and 2016 school.  So as to those unattended
23  absences how does she plead?  True or not true?
24  **MOTHER:** Not guilty.  Not true.
25  **THE COURT:** Give me a date.

2

1   **SCARLET LANCASTER:** Case will be set October 5,

2   2016, at nine o'clock.

3   **MOTHER:** Sir, I have a question.  Even if, if I

4   submitted the proof to the school will I still need to

5   bring those individual pieces here?

6   **THE COURT:** Well, the only way that can be waived

7   is if the Prosecutor's Office agrees to waive it.

8   **MOTHER:** Okay.

9   **THE COURT:** So if you get that documented and get

10   it to the Prosecutor's Office and show them what

11   you've done and what her attendance was, you could be

12   okay and you may not have to attend.

13   **MOTHER:** Okay.

14   **THE COURT:** But, otherwise, on October 5th we're

15   going to have --

16   **MOTHER:** I'll be here.

17   **THE COURT:** -- witnesses in here to testify.

18   **MOTHER:** I'll be here.

19   **THE COURT:** Okay?

20   **MOTHER:** Okay.

21   **THE COURT:** All right, thank you.

22   **MOTHER:** Thank you.

23   **(THEREUPON, the hearing was concluded.)**

24

25

3

**Exhibit B  page4 of 61**

STATE OF ARKANSAS                    §
                                     §
COUNTY OF HOT SPRING                 §

### CERTIFICATE OF REPORTER

I, LECA LEDBETTER, Official Circuit Court Reporter for the
Circuit Court, Seventh Judicial Circuit of Arkansas, certify
that I recorded the proceedings by stenomask recording in the
case of **STATE OF ARKANSAS versus DAYZHAH SMITH; KATELYN WEBB,
mother; Grant County Circuit No. JV-2016-94-1, (September 7,
2016),** before the Honorable Chris E Williams, Circuit Judge
thereof, at Sheridan, Grant County, Arkansas; that said
recording has been reduced to a transcription by me, and the
foregoing pages numbered ____1____ through ____3____ constitute a
true and correct transcript of the proceedings held to the best
of my ability, along with all items of evidence admitted into
evidence.

WITNESS my hand and seal as such Court Reporter on this
____4ᵗʰ____ day of __October__, 2017.


LECA LEDBETTER
Supreme Court C.C.R. #527
210 Locust Street
Malvern, Arkansas 72104
(501) 337-7651


4

Exhibit B  page5 of 61

**IN THE CIRCUIT COURT OF GRANT COUNTY, ARKANSAS**
**JUVENILE DIVISION**

STATE OF ARKANSAS,                                                    PLAINTIFF

                           NO. JV-2016-94-1

DAYZHAH SMITH,                                                        DEFENDANT

KATELYN WEBB,                                                         MOTHER

## RECORD OF HEARING

**BE IT REMEMBERED,** that on the 5th day of October, 2016, the above-styled cause came on for hearing before the Honorable Chris E Williams, Circuit Judge of the Seventh Judicial Circuit of the State of Arkansas, at Sheridan, Grant County, Arkansas, with the following appearances made, and;

THEREUPON, Proceedings were had and done as follows:

### APPEARANCES

**On Behalf of the Plaintiff:**

**MR. NORMAN FRISBY**
Deputy Prosecuting Attorney
101 W. Pine St., Ste 2
Sheridan, Arkansas 72150

**On Behalf of Defendant:**

**Pro Se**

**On Behalf of Mother:**

**Pro se**

**Court Reporter:**
**Leca Ledbetter, CCR No. 527**

5

Exhibit B  page6 of 61

**P R O C E E D I N G S**

1

2      **THE COURT:** State of Arkansas versus Dayzhah

3      Smith, 27JV-16-94.  Dayzhah Smith?  Not present.

4      We'll call it back up in a moment.

5          **(THEREUPON, after first calling the case at 9:18**

6      **a.m., the case was called again at 10:36 a.m.)**

7      **THE COURT:** State of Arkansas versus Dayzhah

8      Smith, 27JV-16-94.  Where were you at 9:00?

9      **MOTHER:** If I just be honest with you -- I guess I

10     have no choice -- but I just didn't have a ride.

11     Didn't have a ride.  Ride didn't show up.  I

12     apologize.

13     **THE COURT:** All right.  You're here for a truancy

14     violation as alleged by a petition before the Court.

15     And as to -- are you, let me get back to your case.

16     It's back at the top of my docket.

17     **MOTHER:** I apologize, sir.

18     **THE COURT:** Eight-two the juvenile was out of

19     town, pled not guilty, reset for September the 7th.

20     Pled not true and reset for October the 5th.  So this

21     is your third time being here.  Is that correct?

22     **MOTHER:** Yes, sir.  Yes, sir.

23     **THE COURT:** It's alleged in the FINS petition

24     that, and you pled not guilty to that FINS petition

25     that she had 12 unexcused absences.  That continues to

6

**Exhibit B  page7 of 61**

```
 1              be your same plea today?
 2                   MOTHER: Yes, sir.
 3                   THE COURT: All witnesses going to testify in the
 4              State of Arkansas versus Dayzhah Smith, please stand
 5              and raise your right hand to be sworn.
 6                   (Witnesses were sworn by the Court.)
 7                   THE COURT: All right.  If you'll please have a
 8              seat right there?  Ma'am, if you'll have a seat?  This
 9              teacher has been here ever since you didn't show up.
10              So she's been here for two hours --
11                   MOTHER: I apologize.
12                   THE COURT: -- thanks to you being late.
13                   MOTHER: I apologize.  Did you tell me to sit
14              down, Your Honor?
15                             ANNETTE NEELEY
16              called as a witness on behalf of the Plaintiff,
17              having been duly sworn, was examined and testified as
18              follows:
19                          DIRECT EXAMINATION
20    BY MR. FRISBY:
21    Q    Could you please state your name for us and your position
22    at the school for the record?
23    A    Annette Neeley, Principal, Sheridan Intermediate School.
24    Q    And is Dayzhah a student at the Sheridan Intermediate
25    School?
```

1    A    Yes, sir.

2    Q    And she was last spring as well?

3    A    Yes, sir.

4    Q    Okay.  And there was a truancy referral referred to the

5    Prosecutor's Office back in May of last year, of this year.

6    Could you tell us about her attendance in the spring semester of

7    this year?

8    A    She had 12 unexcused absences.

9              **THE COURT:** You can have a seat right there,

10             ma'am.

11   Q    So she had 12 unexcused just in the spring semester this

12   past year?

13   A    Yes, sir.

14   Q    And what about this fall semester?  How has she been doing?

15   A    So far this semester she has two unexcused and three

16   tardies.

17   Q    And --

18             **THE COURT:** How many unexcused?

19   A    Two.

20             **THE COURT:** Two?

21   Q    Have any excuses ever been provided for those 12 unexcused

22   for last semester or the two this semester?

23   A    No, sir.

24             **MR. FRISBY:** Pass the witness.

25             **THE COURT:** Questions?

1              **MOTHER:** Yes?

2              **THE COURT:** You may ask questions.

3              **MOTHER:** Okay.  I just have to ask questions,

4         okay.

5                          **CROSS EXAMINATION**

6    **BY MOTHER, pro se:**

7    Q    I'm not sure how to word it in a question.  Forgive me for

8    that.  Did I or did I not -- I was under the impression that you

9    contacted me when the amount of absences exceeded the limit.  I

10   don't know how to ask it a question.  Did I come to the school

11   and provide proof for anything in March?

12   A    We have no excuses for those 12 absences.

13   Q    Okay.  Did you ask, did the lady at the front desk that I

14   talked to that I contacted -- I was never contacted by the

15   school.  I don't know if y'all tried to contact me, but I was

16   never contacted by the school.  But I did go to the school and

17   contact you guys.  Nobody ever contacted me.  Did you not

18   receive in March or the end of February did you receive an

19   affidavit, copy of an affidavit, something happened at my house

20   and the police advise -- I didn't make them go to school the

21   next day because it was a pretty tragic event.

22              **THE COURT:** Well, just a second.  You've got to

23         ask her questions.

24              **MOTHER:** I, I'm trying, sir.

25              **THE COURT:** Listen to me.

1          **MOTHER:** I'm trying.

2          **THE COURT:** Don't be talking while I'm talking.

3          **MOTHER:** Okay.  Yes, sir.

4          **THE COURT:** Listen to me.  You have a right to ask

5    questions.

6          **MOTHER:** Trying to put it in question form.

7          **THE COURT:** You're making a statement.

8          **MOTHER:** Okay.

9          **THE COURT:** If you have a question for the

10    principal then you may ask her a question.  Okay?

11          **MOTHER:** Okay.

12          **THE COURT:** If you want to testify in a moment

13    I'll let you testify.

14          **MOTHER:** Okay.  Thank you, sir.  Thank you.

15    Sorry.

16          **THE COURT:** You may step down.  Any other

17    witnesses?

18          **MR. FRISBY:** We'd call Officer McCool.

19          **THE COURT:** Were you sworn?

20          **OFFICER McCOOL:** No, sir.

21          **THE COURT:** Raise your right hand.

22          **(The witness was sworn by the Court.)**

23          **THE COURT:** Have a seat.

24                   **OFFICER McCOOL**

25    **called as a witness on behalf of the Plaintiff,**

1      **having been duly sworn, was examined and testified as**

2      **follows:**

3                          **DIRECT EXAMINATION**

4    **BY MR. FRISBY:**

5    Q    Officer McCool, did you investigate this case for the

6    Prosecuting Attorney's Office?

7    A    Yes, sir.  I did.

8    Q    And you made some notes out about that, did you not?

9    A    Yes, sir.  I did.

10                **MR. FRISBY:** May I approach the witness, Your

11                Honor?

12                **THE COURT:** You may.

13   Q    These look like your notes, Officer McCool?

14   A    Yes, they are.

15   Q    Could you tell us what you did for this case to investigate

16   it?

17   A    I received this case on Dayzhah Smith on 5-18 of '16.

18   Attempted to make contact on 5-23.  No answer, and I called

19   another number on 5-23 of '16.  That one was disconnected.  5-24

20   I drove to the residence, 9201 Highway 270 West.  Knocked on the

21   door, no response.  5-24 of '16 reached mom, Katelyn Webb, by

22   phone.  She stated she will get excuses to the school today.

23   5-25 per the school mom did not bring excuses.  And then I have

24   on 5-25-16 on the afternoon, that afternoon Katelyn Webb called

25   me on my school phone and told me that she turned in doctor's

11

Exhibit B  page12 of 61

1    excuses and the school told her she was now good with only one

2    day excused, it was all true per the school.

3                    **MR. FRISBY:** Pass the witness.

4                    **THE COURT:** Any questions?

5                    **MOTHER:** Yeah, I do.

6                    **THE COURT:** Not statements.  Ask questions.

7                    **MOTHER:** Yes, sir.

8                          <u>**CROSS EXAMINATION**</u>

9    **BY MOTHER, pro se:**

10   Q    How many times did I contact you?

11   A    My notes say one time.

12   Q    You're testifying under oath that I contacted you one time.

13   A    Yes.

14   Q    Okay.

15                   **MOTHER:** No further questions.

16                   **THE COURT:** You may step down.

17                   **MR. FRISBY:** No further witnesses from the State,

18         Your Honor.

19                   **THE COURT:** Do you wish to testify in your own

20         behalf or have your daughter testify?

21                   **MOTHER:** Sure.  I'll testify.

22        **(The witness was sworn by the Court.)**

23                   **THE COURT:** Have a seat.

24                         <u>**KATELYN WEBB**</u>

25        **called as a witness on behalf of the Defendant,**

12

1          **having been duly sworn, was examined and testified as**

2          **follows:**

3                              **DIRECT EXAMINATION**

4     **BY MOTHER, pro se:**

5     A    Katelyn Webb.

6               **THE COURT:** Just tell what you want concerning the

7               issue of the allegation of truancy.

8     A    Okay.  I don't want to make excuses, but I guess this is

9     kind of what this is, make excuses.  In the month of March we

10    had just quite a bit of bad luck if you will.  I know that's not

11    excuse for the child's education.  That's the most important

12    thing.  But at the end of February we had a very tragic event,

13    which officers from this county responded to.  I didn't make

14    them go to school the next day.  That was at the end of

15    February.  So, I didn't make them go the next day nor the

16    following Monday.  The officers told us it would be a good idea

17    to stay out of town until the guy's trial who attacked us in our

18    home.  I went and stayed in Hot Springs with my grandfather.

19         I have a suspended driver's license.  We were only late a

20    lot of times.  I believe there was, like, nine, nine absences

21    were really only tardies.  The state law says that two hours is

22    what you have and then you're absent for a half a day, the first

23    half of the day.  When you're absent for half a day, two of

24    those makes a whole day of course.  I know there was a lot of

25    times we were just missing it by the hair of our chin.  I know

13

1    it's important to be on time.  But a lot of those were tardies
2    and a lot of those were half days that built up.

3        I did provide proof to the lady at the office.  I didn't
4    keep document of it.  I assumed she did.  I did it in person.
5    They never contacted me.  I contacted them as soon as I, you
6    know, let this -- when they missed six days, I think the limit
7    is nine, I went to the school personally.  Nobody had called me.
8    I hadn't received a letter.  I just went.  And we sat there on
9    the computer, the lady at the office looked on the computer.
10   And my grandfather had died.  I was his primary caregiver, or at
11   home, you know.  And she looked it up with the Regency Funeral
12   Home in Malvern and did confirm and excused that one.  We had
13   them all excused, sir, except for a half a day, literally just a
14   half of a day over the limit.

15       I'm not sure why the school didn't provide her with that
16   proof.  I contacted her five times, at least five times.  A few
17   times while I was on a trip in Branson.  I contacted her -- the
18   day that she came to my house, actually I talked to her right
19   after she left my house, or the same day.  And she told me why
20   she came and I said, well, you can come back if you want, you
21   know, do a home visit, whatever you want to do, put me on some
22   kind of probation as far as the attendance goes.  You can check
23   both of my children's record from the first day of kindergarten
24   we have never exceeded the limit or even got close to the limit,
25   ever.  And we just had a really bad time that second semester.

14

1    A lot of stuff went on.  One day I was in the hospital.  That
2    day was excused.  I sat there and gave the lady, the hospital
3    faxed proof to the school and she excused that one.  I'm not
4    sure where the lack of communication is.  I asked Ms. McCool, I
5    believe is her name, she said that it wasn't her responsibility,
6    that it was the school's, my responsibility to provide the
7    information to the school, which I did.  I assumed that it was
8    the school's responsibility to provide it to her.  I don't know.

9        If I was allowed I'd be more than happy to go get another
10   copy of the affidavit, to get another copy of the thing from the
11   Regency Funeral Home, another one from the hospital, and so on
12   and so forth.

13       It was a half a day, sir, over the limit.  We've moved to
14   Prattsville.  We have no friends or family anywhere around.  So
15   if they miss the bus it's hours on the phone trying to get
16   somebody to take us.  And a lot of those, like I said, were
17   just, like, maybe even two or three minutes past time.  And they
18   were still counted absent for a half a day.  I'd be more than
19   happy to go and get the proof, other copies of the proof and
20   bring it right back here today.  That's all.

21                   **THE COURT:** Questions?

22                   **MR. FRISBY:** No questions.

23                   **THE COURT:** You may step down.

24   A    Thank you.

25                   **THE COURT:** Young lady, you're going to have to go

1    to school.  If you don't go to school mom's going to

2    go to jail.  You understand?  Do you want your mother

3    to go to jail?  Do you want to go to jail?

4         **JUVENILE:** (Shakes head side to side)

5         **THE COURT:** How old are you?  How old are you?

6         **JUVENILE:** Nine.

7         **THE COURT:** Nine?  You can't go to jail.  Too

8    young.  Obviously since you've been late to school and

9    mom and you were late to court today that y'all are

10   used to being late to everything.

11        **MOTHER:** Yes, sir.

12        **THE COURT:** But that's not going to happen

13   anymore, because that's a problem.  That's going to

14   put mom in jail.  That's going to get mom a $50 fine.

15   Did you get up and get ready this morning early?  Huh?

16        **MOTHER:** Answer him.

17        **THE COURT:** Did you get up early this morning and

18   get ready?

19        **JUVENILE:** (Nods head up and down)

20        **THE COURT:** But you were late to court, right?

21        **JUVENILE:** (Nods head up and down)

22        **THE COURT:** See, that's usually what happens in

23   truancy cases.  You get them and the first one out on

24   a truancy plea is late.  Just like they're late to

25   school.  But we can't have that anymore.  That's not

16

Exhibit B  page17 of 61

1          going to be possible.  Because that's going to

2          financially break the household.

3               $35 court cost today.  The Court finds that you

4          are truant, that you have been truant from school in

5          violation of the compulsory school attendance laws of

6          the State of Arkansas.  It is important that you

7          understand that from now on your truancy could cost

8          substantial financial loss to the family.  $50 per day

9          for any future unexcused absence.  If it's excused

10         it's okay.  But if mama doesn't get documentation it's

11         excused it will be an unexcused absence and then

12         mama's going to pay.  After five unexcused absences,

13         after five of those you and/or your mother may both go

14         to jail because you failed to attend school.  Do you

15         understand?  And that'll be at your expense.

16              If there is five days of unexcused absences that

17         come before this Court, I'm directed and I will call

18         the Department of Human Services for educational

19         neglect and remove you from your mother's house.  Why?

20         You're not getting an education because you're not

21         going to school.  By not going to school you'll not be

22         able to get an education, and that's a problem.  And

23         that problem is going to be deemed persistent if you

24         have five unexcused absences during the next two

25         terms, before I see you again on February the 1st of

1    2017 at nine o'clock.  Do we understand?

2    **JUVENILE:** (Nods head up and down)

3    **THE COURT:** Mother, do you understand?

4    **MOTHER:** Yes, sir.  Can I say one more thing?

5    **THE COURT:** What?

6    **MOTHER:** Can I say one thing about the two

7    absences this year?  They were excused.  I provided

8    proof.

9    **THE COURT:** Well, you don't have proof here today,

10   so you don't have proof.

11   **MOTHER:** Yes, sir.

12   **THE COURT:** Because today was the day for your

13   trial.  I've moved this case twice already.  This is

14   the third time that this case has been scheduled.

15   That won't happen again.  I'll see you February 1st,

16   2017, at nine o'clock in this courtroom and I hope I

17   don't have to see you before then, because if I do

18   that means she's truant and you're looking at going to

19   jail.  You understand?

20   **MOTHER:** Yes, sir.  I understand.  Is there anyway

21   I could go right next door and get the proof that I,

22   the same proof I provided to the school --

23   **THE COURT:** You need to get the proof that you

24   think you're going to go get right next door and take

25   it to the school.  Because they have to approve it

18

```
 1              first.
 2                   MOTHER: Yes, sir.  I have.  I've done that.
 3                   THE COURT: Well, go do it.
 4                   MOTHER: Do it now?  Would it help me any?
 5                   THE COURT: Well, it'll help you in the future and
 6              it'll help you now.
 7                   MOTHER: I have them all excused, sir --
 8                   THE COURT: But you need to do it for her benefit
 9              because it documents at the school --
10                   MOTHER: Yes, sir.
11                   THE COURT: -- that there was an excused absence.
12              But right now she needs to be at school.
13                   MOTHER: Yes, sir.
14                   THE COURT: You go do that on your own time.  But
15              not her time.  She needs to be at school right now.
16                   MOTHER: Yes, sir.  I'll take her to school right
17              now.
18                   THE COURT: Okay.  Do it.
19                   (THEREUPON, the hearing was concluded.)
20
21
22
23
24
```

19

STATE OF ARKANSAS                    §
                                     §
COUNTY OF HOT SPRING                 §

## CERTIFICATE OF REPORTER

I, LECA LEDBETTER, Official Circuit Court Reporter for the Circuit Court, Seventh Judicial Circuit of Arkansas, certify that I recorded the proceedings by stenomask recording in the case of **STATE OF ARKANSAS versus DAYZHAH SMITH; KATELYN WEBB, mother; Grant County Circuit No. JV-2016-94-1, (October 5, 2016)**, before the Honorable Chris E Williams, Circuit Judge thereof, at Sheridan, Grant County, Arkansas; that said recording has been reduced to a transcription by me, and the foregoing pages numbered _____5_____ through _____19_____ constitute a true and correct transcript of the proceedings held to the best of my ability, along with all items of evidence admitted into evidence.

WITNESS my hand and seal as such Court Reporter on this _____4th_____ day of _____October_____, 2017.


_____
LECA LEDBETTER
Supreme Court C.C.R. #527
210 Locust Street
Malvern, Arkansas 72104
(501) 337-7651


20

Exhibit B  page21 of 61

**IN THE CIRCUIT COURT OF GRANT COUNTY, ARKANSAS**
**JUVENILE DIVISION**

STATE OF ARKANSAS,                                              PLAINTIFF

NO. JV-2016-94-1

DAYZHAH SMITH,                                                  DEFENDANT

KATELYN WEBB,                                                      MOTHER

### RECORD OF HEARING

**BE IT REMEMBERED,** that on the 1st day of February, 2017,

the above-styled cause came on for hearing before the Honorable

Chris E Williams, Circuit Judge of the Seventh Judicial Circuit

of the State of Arkansas, at Sheridan, Grant County, Arkansas,

with the following appearances made, and;

THEREUPON, Proceedings were had and done as follows:

### APPEARANCES

**On Behalf of the Plaintiff:**

> **MR. NORMAN FRISBY**
> Deputy Prosecuting Attorney
> 101 W. Pine St., Ste 2
> Sheridan, Arkansas 72150

**On Behalf of Defendant:**

> **(no appearance)**

**On Behalf of Mother:**

> **(no appearance)**

**Court Reporter:**
> **Leca Ledbetter, CCR No. 527**

21

Exhibit B  page22 of 61

```
 1              P R O C E E D I N G S
 2          THE COURT: State of Arkansas versus Dayzhah
 3      Smith, 27JV-16-94.  I don't see a Dayzhah Smith here.
 4          SCARLET LANCASTER: No, Your Honor, I don't
 5      either.
 6          THE COURT: Did you get service on her?
 7          SCARLET LANCASTER: No, Your Honor.  We have
 8      returned mail.  But Nora did take the, she took a
 9      notice to the school yesterday for the little girl.
10          THE COURT: When do you want to reset it for?  I'm
11      not issuing a warrant for her arrest.
12          SCARLET LANCASTER: Yes, sir.  February 15th?
13          THE COURT: Get her noticed up for February 15th,
14      nine o'clock.
15          SCARLET LANCASTER: Yes, Your Honor.
16          (THEREUPON, the hearing was concluded.)
17
18
19
20
21
22
23
24
25
```

```
STATE OF ARKANSAS              §
                               §
COUNTY OF HOT SPRING           §
```

## CERTIFICATE OF REPORTER

I, LECA LEDBETTER, Official Circuit Court Reporter for the Circuit Court, Seventh Judicial Circuit of Arkansas, certify that I recorded the proceedings by stenomask recording in the case of **STATE OF ARKANSAS versus DAYZHAH SMITH; KATELYN WEBB, mother; Grant County Circuit No. JV-2016-94-1, (February 1, 2017),** before the Honorable Chris E Williams, Circuit Judge thereof, at Sheridan, Grant County, Arkansas; that said recording has been reduced to a transcription by me, and the foregoing pages numbered ____21____ through ____22____ constitute a true and correct transcript of the proceedings held to the best of my ability, along with all items of evidence admitted into evidence.

WITNESS my hand and seal as such Court Reporter on this ____4ᵗʰ____ day of ____October____, 2017.


LECA LEDBETTER
Supreme Court C.C.R. #527
210 Locust Street
Malvern, Arkansas 72104
(501) 337-7651


23

Exhibit B  page24 of 61

**IN THE CIRCUIT COURT OF GRANT COUNTY, ARKANSAS**
**JUVENILE DIVISION**

STATE OF ARKANSAS,                                          PLAINTIFF

NO. JV-2016-94-1

DAYZHAH SMITH,                                              DEFENDANT

KATELYN WEBB,                                               MOTHER

## RECORD OF HEARING

**BE IT REMEMBERED,** that on the 15th day of February, 2017,
the above-styled cause came on for hearing before the Honorable
Chris E Williams, Circuit Judge of the Seventh Judicial Circuit
of the State of Arkansas, at Sheridan, Grant County, Arkansas,
with the following appearances made, and;

THEREUPON, Proceedings were had and done as follows:

## APPEARANCES

**On Behalf of the Plaintiff:**

**MR. NORMAN FRISBY**
Deputy Prosecuting Attorney
101 W. Pine St., Ste 2
Sheridan, Arkansas 72150

**On Behalf of Defendant:**

**(no appearance)**

**On Behalf of Mother:**

**(no appearance)**

**Court Reporter:**
**Leca Ledbetter, CCR No. 527**

24

Exhibit B  page25 of 61

1           **P R O C E E D I N G S**

2           **THE COURT:** State of Arkansas versus Dayzhah

3     Smith, 27JV-16-94.  Where is she at?

4           **SCARLET LANCASTER:** No service, Your Honor.  We've

5     got that over at the Sheriff's Office trying to get it

6     served.  We haven't gotten a return.

7           **BAILIFF:** We've, we've made multiple attempts,

8     Your Honor, with no response.

9           **THE COURT:** I just can't believe that my bailiff

10    could not find that person.

11          **BAILIFF:** Well, Judge, I think --

12          **THE COURT:** You can find a rock up under a little

13    tree.

14          **BAILIFF:** I've got them located but I can't get

15    them to answer the door.  Unless you want a warrant

16    and then go in and get them.

17          **THE COURT:** Work harder.  Work harder.  You've

18    really got a nice vehicle that you drive, so you've

19    got plenty of people in there if you just get them.

20          **BAILIFF:** They know who I am when I pull up too.

21          **THE COURT:** That's a problem.  May have to get you

22    an old beat up van.

23          **BAILIFF:** No, sir.

24          **THE COURT:** I issued a warrant for them.  I've got

25    to find them -- well, I didn't issue a warrant.  I

                                    25

**Exhibit B  page26 of 61**

```
1            just said no service and we're trying to locate them.

2            We'll get a date.  I'm not going to set it for a date

3            certain because I know I'll have it over with before a

4            year.

5                 (THEREUPON, the hearing was concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
STATE OF ARKANSAS              §
                               §
COUNTY OF HOT SPRING           §
```

## CERTIFICATE OF REPORTER

I, LECA LEDBETTER, Official Circuit Court Reporter for the Circuit Court, Seventh Judicial Circuit of Arkansas, certify that I recorded the proceedings by stenomask recording in the case of **STATE OF ARKANSAS versus DAYZHAH SMITH; KATELYN WEBB, mother; Grant County Circuit No. JV-2016-94-1, (February 15, 2017)**, before the Honorable Chris E Williams, Circuit Judge thereof, at Sheridan, Grant County, Arkansas; that said recording has been reduced to a transcription by me, and the foregoing pages numbered ___24___ through ___26___ constitute a true and correct transcript of the proceedings held to the best of my ability, along with all items of evidence admitted into evidence.

WITNESS my hand and seal as such Court Reporter on this ___4ᵗʰ___ day of ___October___, 2017.


_____
LECA LEDBETTER
Supreme Court C.C.R. #527
210 Locust Street
Malvern, Arkansas 72104
(501) 337-7651


27

Exhibit B  page28 of 61

**IN THE CIRCUIT COURT OF GRANT COUNTY, ARKANSAS**
**JUVENILE DIVISION**

STATE OF ARKANSAS,                                                    PLAINTIFF

NO. JV-2016-94-1

DAYZHAH SMITH,                                                        DEFENDANT

KATELYN WEBB,                                                            MOTHER

## RECORD OF HEARING

**BE IT REMEMBERED,** that on the 5th day of April, 2017, the above-styled cause came on for hearing before the Honorable Chris E Williams, Circuit Judge of the Seventh Judicial Circuit of the State of Arkansas, at Sheridan, Grant County, Arkansas, with the following appearances made, and;

THEREUPON, Proceedings were had and done as follows:

## APPEARANCES

**On Behalf of the Plaintiff:**

> **MR. NORMAN FRISBY**
> Deputy Prosecuting Attorney
> 101 W. Pine St., Ste 2
> Sheridan, Arkansas 72150

**On Behalf of Defendant:**

> **(no appearance)**

**On Behalf of Mother:**

> **(no appearance)**

**Court Reporter:**
> **Leca Ledbetter, CCR No. 527**

28

Exhibit B  page29 of 61

1          **P R O C E E D I N G S**

2              **THE COURT:** State of Arkansas versus Dayzhah

3      Smith, case number 27JV-16-94.  I don't see Dayzhah

4      here.  Warrant issued.  Mandatory appearance.

5                  **(THEREUPON, the hearing was concluded.)**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit B  page30 of 61

STATE OF ARKANSAS                §
                                 §
COUNTY OF HOT SPRING             §

## CERTIFICATE OF REPORTER

I, LECA LEDBETTER, Official Circuit Court Reporter for the Circuit Court, Seventh Judicial Circuit of Arkansas, certify that I recorded the proceedings by stenomask recording in the case of **STATE OF ARKANSAS versus DAYZHAH SMITH; KATELYN WEBB, mother; Grant County Circuit No. JV-2016-94-1, (April 5, 2017),** before the Honorable Chris E Williams, Circuit Judge thereof, at Sheridan, Grant County, Arkansas; that said recording has been reduced to a transcription by me, and the foregoing pages numbered ___28___ through ___29___ constitute a true and correct transcript of the proceedings held to the best of my ability, along with all items of evidence admitted into evidence.

WITNESS my hand and seal as such Court Reporter on this ___4ᵗʰ___ day of ___October___, 2017.

LECA LEDBETTER
Supreme Court C.C.R. #527
210 Locust Street
Malvern, Arkansas 72104
(501) 337-7651

30

Exhibit B  page31 of 61

**IN THE CIRCUIT COURT OF GRANT COUNTY, ARKANSAS**
**JUVENILE DIVISION**

STATE OF ARKANSAS,                                                    PLAINTIFF

NO. JV-2016-94-1

DAYZHAH SMITH,                                                        DEFENDANT

KATELYN WEBB,                                                            MOTHER

## RECORD OF HEARING

**BE IT REMEMBERED,** that on the 10th day of May, 2017, the
above-styled cause came on for hearing before the Honorable
Chris E Williams, Circuit Judge of the Seventh Judicial Circuit
of the State of Arkansas, at Sheridan, Grant County, Arkansas,
with the following appearances made, and;

THEREUPON, Proceedings were had and done as follows:

## APPEARANCES

**On Behalf of the Plaintiff:**

**MR. NORMAN FRISBY**
Deputy Prosecuting Attorney
101 W. Pine St., Ste 2
Sheridan, Arkansas 72150

**On Behalf of Defendant:**

**Pro Se**

**On Behalf of Mother:**

**Pro se**

**Court Reporter:**
**Leca Ledbetter, CCR No. 527**

31

Exhibit B  page32 of 61

**P R O C E E D I N G S**

1
2     **THE COURT:** This is State of Arkansas versus
3     Dayzhah Smith, 27JV-16-94.
4         **MOTHER:** Do apologize, sir.  I had no idea I was
5     supposed to be in court.
6         **THE COURT:** Well, we had a warrant for her arrest
7     and we were waiting for her to get to school.  We got
8     her.  I knew we'd find you if we found her.  Why
9     didn't she come to court the other day?  She failed to
10     appear.
11         **MOTHER:** I had --
12         **THE COURT:** Ladies and gentlemen, hey, listen.
13     Court is in session.  You need to step outside.
14         **MOTHER:** I was unaware of any court date at all.
15     I assumed that I would receive something in the mail
16     or that the school would send home some type of
17     letter.
18         **THE COURT:** So I'll show she pleads not true to
19     failure to appear.  She was set for a truancy review
20     in open court, I believe is the situation.  So all
21     witnesses going to testify, if you would, please stand
22     and raise your right hand to be sworn?
23         **(Witnesses were sworn by the Court.)**
24         **THE COURT:** Oh, you too?  Okay.  Mr. Frisby --
25     y'all have a seat right there.  Mr. Frisby, call you

32

1          first witness.

2                          **ANNETTE NEELEY**

3          **called as a witness on behalf of the Plaintiff,**

4          **having been duly sworn, was examined and testified as**

5          **follows:**

6                          **DIRECT EXAMINATION**

7    **BY MR. FRISBY:**

8    Q    Would you state your name for the record please?

9    A    Annette Neeley.

10   Q    Ms. Neeley, are you familiar with Miss Smith's attendance

11   at school?

12   A    Yes, sir, I am.

13   Q    If you could, tell the Judge what her attendance has been

14   like?

15   A    Okay.  Since October she has been absent 27, well, this,

16   for the year, for the school year 27 absences and 16 tardies for

17   this school year.

18                  **THE COURT:** Are those unexcused?

19   A    Yes, sir.

20                  **THE COURT:** And how many tardies?

21   A    Sixteen for the year.  Since October there have been 15

22   absences and 11 tardies.

23                  **MR. FRISBY:** No further questions, Your Honor.

24                  **THE COURT:** Do you have any questions?

25                  **MOTHER:** Sure.

33

Exhibit B  page34 of 61

1                              **CROSS EXAMINATION**

2     **BY MOTHER, pro se:**

3     Q    How long whenever someone is tardy, what's the amount of

4     time to where they're considered absent for the first part of

5     the day, which is a half a day?

6     A    Right.  After nine o'clock.

7     Q    After nine o'clock?

8     A    Mmm-hmm.

9     Q    Okay.  What is the purpose of the sign-in sheet when you

10    come and sign your child in school when you're tardy?

11    A    So we know exactly what time the children --

12    Q    Okay.  Y'all keep documents.

13    A    Yes, ma'am.

14    Q    Y'all keep copies of those.

15    A    Yes, ma'am.

16    Q    Okay.  Will I have access to those?

17    A    Certainly.

18              **THE COURT:** Any other questions?

19              **MOTHER:** No.

20              **THE COURT:** You may step down.  Call your next.

21              **MR. FRISBY:** No further witnesses.

22              **THE COURT:** I've got a failure to appear I don't

23         think she testified --

24              **MR. FRISBY:** Do we want to try that today, Your

25         Honor?

34

Exhibit B  page35 of 61

1          **THE COURT:** Oh, yes.

2          **MR. FRISBY:** Okay.  Call Officer Lancaster.

3                              **SCARLET LANCASTER**

4          **called as a witness on behalf of the Plaintiff,**

5          **having been duly sworn, was examined and testified as**

6          **follows:**

7                              **DIRECT EXAMINATION**

8     **BY MR. FRISBY:**

9     Q     Did Ms. Smith fail to appear on a day for juvenile court?

10    A     Yes.  She did.

11    Q     And which day was that?

12    A     April the 5th we had, have certified mail service showing

13    that she did receive the one to, it was left delivered and left

14    with an individual at her residence on March the 25th that was

15    for her April 5th court date.  We had sent her other pieces of

16    mail for her daughter to come to court.  And she on October the

17    5th when was in court she was told that there would be a review

18    on February the 1st.

19    Q     Did that review on February 1st occur?

20    A     It occurred.  There was nobody here.

21    Q     Okay.  And what, you said you sent certified mail notice to

22    be here on April 5th.

23    A     Mmm-hmm.

24    Q     Do you have that certified mail return with you?

25    A     I have a copy of what was returned to the post office.

35

Exhibit B  page36 of 61

1    Q    Great, exactly.  Do you have a copy of that notice as well?

2    A    Yes, I do.

3              **THE COURT:** It's been electronically filed in the

4              case file --

5              **MR. FRISBY:** Okay.

6    A    Yes.

7              **THE COURT:** -- and the Court will take judicial

8              notice of the case file.  The UPS tracking results, is

9              that what you have?

10   A    Yes, Your Honor.

11             **THE COURT:** I've got that in the file.  It's filed

12             of record before the Court on April the 4th, 2017.

13             **MR. FRISBY:** Thank you, Your Honor.  No further

14             questions.

15             **THE COURT:** Okay.  Do you have any questions?  You

16             may step down.

17   A    Thank you, Your Honor.

18             **THE COURT:** All right, the Court had a docket

19             entry whereupon there was, this case was set for

20             review for Dayzhah Smith back on February, to review

21             back in February of 2017.  On that date on February of

22             2017 it was set, there was a judge's note.  That was

23             February the 1st.  Pursuant to that she did not

24             appear.  I, we had agreed to re-notice it, Ms.

25             Lancaster and myself said, well, let's notice her

36

Exhibit B  page37 of 61

1       back.  We didn't want to issue a warrant at that time.
2       On 2-15-17 we didn't have any service at that time.
3       Then we sent certified mail and the judge's note on
4       4-10 showed that the, we had proof of service to the
5       household.  I issued a warrant on 4-5-17, no bond.
6       You failed to appear.  You were directed back in
7       October to appear in this court.  You didn't appear on
8       that date.  I was trying to show some lenience to you
9       by trying to help you get in here.  But you just
10      disregarded everything that was going on.  And I'm
11      looking at a girl that's got 27 unexcused absences for
12      the year, 15 of them since October.  That's just, it's
13      ridiculous.  And she's not going to get an education.
14      My next step -- what's your name, ma'am?

15          **MOTHER:** Katelyn Webb.

16          **THE COURT:** My next step is to remove your child
17      from your household.

18          **MOTHER:** No.

19          **THE COURT:** I'm going to call the Department and
20      ask them to do an evaluation for the Court and remove
21      your child based upon educational neglect.  Because
22      you're not doing what you need to do to make sure she
23      goes to school.  And that's your responsibility.  It's
24      no one else's.  And she was in school today and I'm
25      going to make sure she goes back.  We're going to

1          transport her back to school.  You're not going to but

2          we're going to transport her back.

3               But for the failure to appear is $175 fine.

4          You're in contempt of the court by not following the

5          directions of the Court making sure she went to

6          school.

7               **MOTHER:** She's been at school, Your Honor.  If I

8          can --

9               **THE COURT:** Ten days in jail, suspended.  That's

10         on you.  Ten days for you to go to jail.

11              **MOTHER:** Right.

12              **THE COURT:** That's suspended only if she has no

13         more unexcused.

14              **MOTHER:** Sir, there are excused.  There is no,

15         there's not been any --

16              **THE COURT:** Ma'am --

17              **MOTHER:** -- unexcused absences.

18              **THE COURT:** You don't need to argue with me.

19         Just --

20              **MOTHER:** I'm not trying to, sir.

21              **THE COURT:** -- I'm just telling you simply if she

22         has another unexcused absence I'm coming to pick you

23         up.

24              **MOTHER:** That's fine.

25              **THE COURT:** I'm not coming to pick her up.

38

1           **MOTHER:** That's fine.

2           **THE COURT:** You're going to go to jail.

3           **MOTHER:** I understand.

4           **THE COURT:** So you should always keep a toothbrush

5      packed.

6           **MOTHER:** Yes, sir.

7           **THE COURT:** If I have a tardy, five days in jail.

8           **MOTHER:** Sir, I have copies of the excuses myself

9      that I have given to the school.  They sent me a --

10          **THE COURT:** The only reason I'm not removing your

11     child from the household right now is only because I

12     know I'm going to put you in jail.  And as soon as I

13     put you in jail then I'm going to take your child

14     because there's nobody taking care of her.  So I'm

15     going to take your child away from you as soon as I

16     put her in jail.  Everything's built around one thing.

17     You get her to school on time and you get her to

18     school -- don't look down.  You look at me, young

19     lady.  You get her to school on time and you get her

20     to school or you're going to jail and I'm giving it to

21     DHS and let them figure out what they're going to do.

22     Because they'll take your child.  Do you understand?

23          **MOTHER:** (Nods head up and down)

24          **THE COURT:** If the child has an unexcused absence

25     you need to notify the juvenile office upon her

39

Exhibit B  page40 of 61

1        unexcused absence.  Then they'll notify me.  I'll

2        issue a warrant for her pick up and then I'll call the

3        Department of Human Services because it's my

4        requirement to notify them on an educational neglect.

5             The Court finds the mother willfully violated the

6        court order of October, 2016.  Are we clear?  Do I

7        need to explain this one more time to you?

8             **MOTHER:** (Shakes head side to side)

9             **THE COURT:** $175 is due in 30 days.  $50 fine

10       today for her non-attendance during the period of time

11       after the order was entered.  The next step is that

12       she will get another $50 fine for any other unexcused

13       absences. And if she has five she goes to jail.  How

14       old are you?  Young lady, how old are you?

15            **JUVENILE:** (Inaudible)

16            **THE COURT:** Huh?

17            **JUVENILE:** (Inaudible)

18            **THE COURT:** What?

19            **JUVENILE:** (Inaudible)

20            **THE COURT:** How old are you?

21            **JUVENILE:** Ten.

22            **THE COURT:** Can't escape this.

23            **MOTHER:** I'm not trying to escape it, sir.

24            **THE COURT:** Well, she hasn't got a chance if you

25       don't help her.  She won't make it.

40

Exhibit B  page41 of 61

1          **MOTHER:** She has not missed that many full days,

2          she hasn't.  I can show you.  If I can go down to the

3          school I can get proof --

4          **THE COURT:** You're going to have to, you're going

5          to have to show it to the school.  You don't need to

6          show it to me because the school's keeping the

7          records.  And I'm --

8          **MOTHER:** But I have --

9          **THE COURT:** -- relying upon their records.

10         **MOTHER:** I understand.  I have, I took pictures of

11         each excuse that I gave them just in case --

12         **THE COURT:** Could you explain the tardies?

13         **MOTHER:** The tardies?

14         **THE COURT:** Yeah.

15         **MOTHER:** Can I explain them?  What do you mean?

16         Five minutes, I mean, five minutes late is tardy.  I

17         know tardy is tardy.

18         **THE COURT:** That's tardy.

19         **MOTHER:** I know tardy is tardy but it's not

20         absent.

21         **THE COURT:** Tardy is five days to you.

22         **MOTHER:** No, but it's not absent.  She's been

23         counted absent for the entire half of the day.  And

24         those add up to whole days, absences.  In fact, some

25         of it she has not been absent.

41

1          **THE COURT:** There can't be any tardies --

2          **MOTHER:** Five minutes late does not mean absent --

3          **THE COURT:** You know, you can argue with me --

4          **MOTHER:** I'm not trying to.

5          **THE COURT:** -- you can't, you can't mess up.  If

6     she's tardy you're going to jail.

7          **MOTHER:** I understand.

8          **THE COURT:** And then she's coming out of your

9     household.

10         **MOTHER:** I understand.

11         **THE COURT:** It's no good.

12         **MOTHER:** No, it's not.

13         **THE COURT:** I think we've got the do-better

14    thought about this.  You better do better.  Okay?

15    Because if you don't I'm going to put her in, I'm

16    going to put her in foster care.  Okay?  Good luck to

17    you.

18         **SCARLET LANCASTER:** I need to confirm your mailing

19    address please?

20         **MOTHER:** 9201 Highway 270 West.

21         **SCARLET LANCASTER:** Okay.  Do y'all have a mailbox

22    there --

23         **MOTHER:** Yeah, we do.

24         **SCARLET LANCASTER:** -- because I've had mail to be

25    returned, so.

Exhibit B  page43 of 61

1        **MOTHER:** Yeah, I do.

2        **SCARLET LANCASTER:** We will continue to use that

3        address.

4        **THE COURT:** You'll be getting a copy of the order

5        in the mail.  Is this the order for today?

6        **SCARLET LANCASTER:** Yes, Your Honor.

7        **THE COURT:** Well, go get it e-filed.  I'm going to

8        give her a copy right now.  And I'm going to make the

9        record reflect I'm writing on the judgment, copy of

10       order hand delivered.

11       **SCARLET LANCASTER:** Okay.  Nora will run down and

12       get it.

13       **THE COURT:** No.  You just need to go in there and

14       get it, you need to go in there and get it --

15       **SCARLET LANCASTER:** Yes, Your Honor.

16       **THE COURT:** -- copied, then run down there and --

17       when you get it e-filed mail her a copy.  But I'm

18       going to make sure she got a copy of it today.  Don't

19       leave here till I get this copy in your hands.

20       Need a review date.

21       **SCARLET LANCASTER:** September 20th is the review

22       date that we have written down.

23       **THE COURT:** Is it in the order?

24       **SCARLET LANCASTER:** Yes, Your Honor, September

25       20th at 9:00 a.m.

43

Exhibit B  page44 of 61

1            **THE COURT:** September 20, you want me to write
2       that down for you?
3            **MOTHER:** Yes.
4            **SCARLET LANCASTER:** It's on the order, Your Honor.
5            **THE COURT:** Okay.  It's in your order.
6            **MOTHER:** I don't have any order.  I don't have it.
7            **THE COURT:** I'm fixing to give it to you right
8       now.
9            **(THEREUPON, the hearing was concluded.)**
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

44

STATE OF ARKANSAS          §
                           §
COUNTY OF HOT SPRING       §

## CERTIFICATE OF REPORTER

I, LECA LEDBETTER, Official Circuit Court Reporter for the Circuit Court, Seventh Judicial Circuit of Arkansas, certify that I recorded the proceedings by stenomask recording in the case of **STATE OF ARKANSAS versus DAYZHAH SMITH; KATELYN WEBB, mother; Grant County Circuit No. JV-2016-94-1, (May 10, 2017)**, before the Honorable Chris E Williams, Circuit Judge thereof, at Sheridan, Grant County, Arkansas; that said recording has been reduced to a transcription by me, and the foregoing pages numbered ___31___ through ___44___ constitute a true and correct transcript of the proceedings held to the best of my ability, along with all items of evidence admitted into evidence.

WITNESS my hand and seal as such Court Reporter on this ___4th___ day of ___October___, 2017.



LECA LEDBETTER
Supreme Court C.C.R. #527
210 Locust Street
Malvern, Arkansas 72104
(501) 337-7651


45

Exhibit B  page46 of 61

**IN THE CIRCUIT COURT OF GRANT COUNTY, ARKANSAS
JUVENILE DIVISION**

STATE OF ARKANSAS,                                              PLAINTIFF

NO. JV-2016-94-1

DAYZHAH SMITH,                                                DEFENDANT

KATELYN WEBB,                                                     MOTHER

**RECORD OF HEARING**

**BE IT REMEMBERED**, that on the 28th day of June, 2017, the
above-styled cause came on for hearing before the Honorable
Chris E Williams, Circuit Judge of the Seventh Judicial Circuit
of the State of Arkansas, at Sheridan, Grant County, Arkansas,
with the following appearances made, and;

THEREUPON, Proceedings were had and done as follows:

**APPEARANCES**

**On Behalf of the Plaintiff:**

**MR. NORMAN FRISBY**
Deputy Prosecuting Attorney
101 W. Pine St., Ste 2
Sheridan, Arkansas 72150

**On Behalf of Defendant:**

**Pro Se**

**On Behalf of Mother:**

**Pro se**

**Court Reporter:**
**Leca Ledbetter, CCR No. 527**

46

Exhibit B  page47 of 61

**P R O C E E D I N G S**

1
2       **THE COURT:** State of Arkansas versus Dayzhah
3       Smith, case number 27JV-16-94.  Well, Dayzhah's in, on
4       a truancy review and he's tardy and his mama's tardy.
5           **SCARLET LANCASTER:** We have proof of service.  We
6       have a green card that was returned to us.
7           **THE COURT:** Ms. Smith, I got you to come over here
8       because this is the case I had you here for.  I was
9       going to put the mother in jail.  Maybe she got word
10      she was going to jail.  Mom's not paid the court costs
11      or paid her fines.  But, more importantly, I've got
12      unexcused absences.  And mom's in contempt because
13      she's not paid the fines and she's allowed another
14      unexcused absence.  So I'm going to ask of you a
15      supportive service case and you check up on her and
16      see what's going on with her.  And tell her she missed
17      her court date, or her son missed his court date and
18      she was supposed to be here too.  And let's track it.
19      If you'll get with the juvenile court office today and
20      get the address, go by and make a drive-by visit and
21      see how everything's going?  I don't know why they're
22      not here.
23          Warrant issued.
24          **SCARLET LANCASTER:** On the mother, Your Honor?
25          **THE COURT:** No, on the child.  I don't have

47

Exhibit B  page48 of 61

1    jurisdiction of the mother yet till I find her in

2    contempt.  I haven't done that yet.  I can't do it

3    unless she's here and has an opportunity to explain to

4    me why she shouldn't be held in contempt.

5        **SCARLET LANCASTER:** Yes, Your Honor.

6        **(THEREUPON, after first being called at 9:52 a.m.**

7    **the case was later called again at 10:43 a.m.)**

8        **THE COURT:** This is 27JV-16-94, State of Arkansas

9    versus Dayzhah Smith.  Is that your kids?

10        **MOTHER:** Yes, sir.

11        **THE COURT:** Well, come on up here.  Go to that

12    podium.  Now, I've had to bring everybody, I've had to

13    bring the court reporter back and the juvenile office

14    back because you were late.

15        **MOTHER:** I apologize.

16        **THE COURT:** Court started at nine o'clock.  Be

17    $175 fine for failure to appear in a timely manner.

18    Dayzhah has one more unexcused absence after her May

19    10th court date and her grades are good except for a

20    62 in math.

21        **MOTHER:** Yes, sir.

22        **THE COURT:** I believe you said the last if she was

23    even one minute late I get five days in jail.

24        **THE COURT:** That's correct.

25        **MOTHER:** She was not not one minute late after

48

**Exhibit B  page49 of 61**

1          that.

2                    **THE COURT:** Well, she missed a whole day.

3                    **MOTHER:** No, sir.

4                    **THE COURT:** Yes, she did.  She got an unexcused

5          absence.

6                    **MOTHER:** When?  When?

7                    **THE COURT:** What's the date?

8                    **RYANE SOREY:** May 24th is (inaudible).

9                    **MOTHER:** Which is, what, the last day of school?

10                   **RYANE SOREY:** I think the last day was the 26th,

11         so that was maybe Tuesday right before the end of

12         school.  I think, look at my calendar.

13                   **MOTHER:** So you're telling me if she missed school

14         then it's ten days in jail.  There is no, she did not

15         miss school.  The very last day of school they, the

16         teacher said that they didn't have to go the last two

17         days.  I'm not sure why but I made them go.  I didn't

18         make them go the last day.

19                   **THE COURT:** Who made that decision?

20                   **MOTHER:** Who made what decision, sir?

21                   **THE COURT:** Who made the decision for her not to

22         go to school?

23                   **MOTHER:** The very last day of school?

24                   **THE COURT:** It wasn't the very last day of school.

25                   **MOTHER:** That's the day that she missed.  She

49

Exhibit B  page50 of 61

1        didn't miss any other day, sir.

2        **THE COURT:** She also still owes $175 fine and $35

3        court costs from case in 2016, $50 fine for unexcused

4        absence due in 30 days.  You work?

5        **MOTHER:** Yes, sir.

6        **THE COURT:** Where at?

7        **MOTHER:** At home.  I do hair.  I'm a

8        cosmetologist.  I just enrolled in school, going back

9        to school.

10       **THE COURT:** Mother is found in contempt of court

11       based upon the previous court order of May the 10th of

12       2017 where she was directed that the child was not to

13       miss any school, even the last day of school.  She was

14       to miss no school.  She has, Dayzhah has a, grades

15       that are improved but she has a 62 in math.  Mother

16       owes still from 2016 $175 fine and a $35 court cost.

17       $50 fine today to be paid in 30 days.  Mother is

18       ordered to jail at her expense, being placed in

19       contempt of the Court's order and was directed that

20       that would be the occurrence.

21       I'm going to review this case on September the

22       20th, 2017.

23       **MOTHER:** Do we still have the review on September

24       8th?

25       **THE COURT:** Do what?

1        **MOTHER:** Last time I was here you said September

2    8th was the review.

3        **THE COURT:** September the 20th is the review now.

4        **MOTHER:** Okay.

5        **THE COURT:** You need to come over here and have a

6    seat.  I've got the Department of Human Services

7    coming to pick the kids up.

8        **MOTHER:** Can their father pick them up?

9        **THE COURT:** I'll have to let them --

10       **MOTHER:** Sir.  Sir.  I'll get on my knees and beg,

11   no.

12       **THE COURT:** Do what?

13       **MOTHER:** Please, sir.  Please don't do this.

14       **THE COURT:** Oh, I'm going to put you in jail

15   today.

16       **MOTHER:** Okay.  Can my kids not go with their

17   grandmother, anything?  Can their grandfather come get

18   them?

19       **THE COURT:** The Department of Human Services will

20   be looking for relative placement to determine where

21   they should be placed.

22       **MOTHER:** Sir.

23       **THE COURT:** But they'll look at relative placement

24   first.

25       **MOTHER:** Can I call my attorney?

51

Exhibit B  page52 of 61

1          **THE COURT:** Yeah.

2          **MOTHER:** Anything?

3          **THE COURT:** You can go call your attorney --

4          **MOTHER:** Before they go?

5          **THE COURT:** When you get to jail.  Mother's going

6     to jail.  Father is not here.  I need you to take

7     custody.  I want you to do relative placement if at

8     all possible with the family unit.

9          **MOTHER:** Sir, please don't do this.  Please don't,

10    please --

11         **THE COURT:** Oh, hey, listen.  Court started at

12    nine.  You walked in here at ten o'clock.

13         **MOTHER:** Sir, my battery is dead.  It's probably

14    dead right now.  Go and try to start my truck.  It's

15    probably dead right now.  I don't have a phone or

16    anything.  Please don't do this.  Please.

17         **THE COURT:** You're going to jail.  I told you what

18    was going to happen.

19         **MOTHER:** I can go to jail, sir.  I can go to jail.

20    But let them go with their grandmother or their

21    grandfather please.

22         **THE COURT:** Well, let --

23         **MOTHER:** (Inaudible) Jones can be here in 20

24    minutes.

25         **THE COURT:** You need to be, you need to be talking

52

1           to them and tell them who's a qualified person to care
2           for the children that they can look at for relative
3           placement, because they know my position is that I
4           always seek relative placement first.  But they have
5           to be screened by the Department to confirm.  Do you
6           understand?
7                **MOTHER:** Sir, I --
8                **THE COURT:** Cuff her.
9                **MOTHER:** I'm not leaving my kids --
10               **THE COURT:** Yeah, you are.
11               **MOTHER:** I will go to jail but (inaudible).  Sir,
12          why you got to do this?
13               **BAILIFF:** Do you have the phone number we can give
14          them to call your grandparents?  Do you have that
15          number with you?
16               **MOTHER:** Sir, why do you got to do this?
17               **BAILIFF:** I'm not (inaudible).  Do you have the
18          number (inaudible) to call your grandparents?
19               **MOTHER:** Yes.
20               **BAILIFF:** Okay.  Come over here, come over here
21          and let me give you this piece of paper --
22               **MOTHER:** I can't do this.
23               **BAILIFF:** -- and you can write it --
24               **MOTHER:** I can't do it.  I'll go to jail.  They
25          cannot go to (inaudible), sir -- no, I've been, no.

53

1           **BAILIFF:** All right.  Come over here and I'll give
2       you a piece of paper to write those numbers.
3           **MOTHER:** No.  I just want to run right now with my
4       babies.  Please.
5           **THE COURT:** You're not going to run anywhere.
6           **MOTHER:** Sir.  (Inaudible)
7           **THE COURT:** Charles, go ahead and cuff her.
8           **MOTHER:** They don't understand.
9           **BAILIFF:** They're all right.  Come back here with
10      me.
11          **THE COURT:** Oh, I think they understand.
12          **MOTHER:** They don't understand.  They don't know
13      these people.  They're very shy.  They're not going to
14      even talk to them.
15          **(THEREUPON, the mother was escorted from the**
16      **courtroom.)**
17          **THE COURT:** I think maybe the grandparents might
18      be best.  I don't know anything about the father.
19      Five days in jail at her expense.
20          **SCARLET LANCASTER:** Five days?
21          **(THEREUPON, the hearing was concluded.)**
22
23
24
25

STATE OF ARKANSAS             §
                             §
COUNTY OF HOT SPRING          §

## CERTIFICATE OF REPORTER

    I, LECA LEDBETTER, Official Circuit Court Reporter for the Circuit Court, Seventh Judicial Circuit of Arkansas, certify that I recorded the proceedings by stenomask recording in the case of **STATE OF ARKANSAS versus DAYZHAH SMITH; KATELYN WEBB, mother; Grant County Circuit No. JV-2016-94-1, (June 28, 2017),** before the Honorable Chris E Williams, Circuit Judge thereof, at Sheridan, Grant County, Arkansas; that said recording has been reduced to a transcription by me, and the foregoing pages numbered ___46___ through ___54___ constitute a true and correct transcript of the proceedings held to the best of my ability, along with all items of evidence admitted into evidence.

    WITNESS my hand and seal as such Court Reporter on this ___4th___ day of ___October___, 2017.


LECA LEDBETTER
Supreme Court C.C.R. #527
210 Locust Street
Malvern, Arkansas 72104
(501) 337-7651

55

**Exhibit B  page56 of 61**

**IN THE CIRCUIT COURT OF GRANT COUNTY, ARKANSAS
JUVENILE DIVISION**

STATE OF ARKANSAS,                                                    PLAINTIFF

NO. JV-2016-94-1

DAYZHAH SMITH,                                                       DEFENDANT

KATELYN WEBB,                                                          MOTHER

**RECORD OF HEARING**

**BE IT REMEMBERED,** that on the 20th day of September, 2017, the above-styled cause came on for hearing before the Honorable Chris E Williams, Circuit Judge of the Seventh Judicial Circuit of the State of Arkansas, at Sheridan, Grant County, Arkansas, with the following appearances made, and;

THEREUPON, Proceedings were had and done as follows:

**APPEARANCES**

**On Behalf of the Plaintiff:**

> **MR. NORMAN FRISBY**
> Deputy Prosecuting Attorney
> 101 W. Pine St., Ste 2
> Sheridan, Arkansas 72150

**On Behalf of Defendant and Mother:**

> **MR. JOSEPH CHURCHWELL**
> Attorney at Law
> P.O. Box 2498
> Benton, Arkansas 72018

**Court Reporter:**
> **Leca Ledbetter, CCR No. 527**

56

1　　　　　　　　**P R O C E E D I N G S**

2　　　　　　**THE COURT:** State of Arkansas versus Dayzhah

3　　　　　Smith, 27JV-16-94.  Dayzhah has one unexcused absence

4　　　　　since the start of school in August.

5　　　　　　**MR. CHURCHWELL:** Your Honor, that was excused.  We

6　　　　　have a doctor's note that was provided to the school

7　　　　　yesterday.  I believe they've updated their records.

8　　　　　　**THE COURT:** Ms. Sorey?

9　　　　　　**RYANE SOREY:** I believe she's a Poyen student now.

10　　　　I'm sorry.

11　　　　　　**THE COURT:** So you don't have anything to add?  Do

12　　　　y'all have anything from Poyen confirming that?

13　　　　　　**SCARLET LANCASTER:** No, sir.

14　　　　　　**THE COURT:** Mom has not paid her court costs or

15　　　　anything toward the 350 in fines and costs that she

16　　　　has outstanding.

17　　　　　　**MR. CHURCHWELL:** I was unaware of that.  I'll take

18　　　　care of it.  Shows 350 --

19　　　　　　**THE COURT:** Shows 350 in fines and 35 court cost.

20　　　　　　**MR. CHURCHWELL:** And the fines were from the

21　　　　incident preceding the five days?  Is that correct?

22　　　　　　**THE COURT:** Mmm-hmm.

23　　　　　　**MR. CHURCHWELL:** Okay.  So 350 in fines and 35 in

24　　　　court costs.  I'll make sure that's taken care of by

25　　　　the end of the week, Your Honor, if I may have that

57

1          much time.

2               **THE COURT:** I'm going to reset it for a hearing

3          subject to you being able to get with the Poyen School

4          District, get confirmation that that day has been

5          found to be excused instead of unexcused.  Because

6          we're showing in our records -- there is not anybody

7          here from Poyen today to give us that information.

8          Her grades are good.  Not as good as they could be.

9          She needs to improve them.

10              **MR. CHURCHWELL:** May I approach, Your Honor.  I

11         have a snapshot of the doctor's note if that would

12         help out.

13              **THE COURT:** Well, I've just got to get something

14         from them confirming they did.  They didn't call us to

15         let us know --

16              **MR. CHURCHWELL:** You mean from the school?

17              **THE COURT:** From the school.  I'm going to review

18         this case back on January the 16th.  But I need before

19         then these costs and, court costs, man, they've got to

20         be paid.  They're way late.  And then the fine.

21              **MR. CHURCHWELL:** That'll be taken care of, Your

22         Honor.  The 16th at 8:45?

23              **THE COURT:** If you'll get us documentation, then

24         I'm not going to set it for a hearing day in between

25         there.  I'll waive the hearing date if Poyen will give

58

Exhibit B  page59 of 61

1      us confirmation that unexcused absence has actually

2      been excused.

3              **MR. CHURCHWELL:** And was that January 16th at

4      8:45?

5              **THE COURT:** January 16th at nine.  That will be

6      2018.  But I think you can get that.  I think they're,

7      they've got good people over there just like they do

8      at Sheridan.  They'll get us something and let us

9      know.  We just didn't get it.  And usually they have

10     somebody here when they have somebody that's on

11     truancy.  But nobody's here.  Ms. Sorey is here for

12     Sheridan, but it doesn't help them.  Okay.

13             **MR. CHURCHWELL:** They'll get it together I'm sure.

14             **THE COURT:** Okay.  Back to school.  Hey, you need

15     to make better grades.

16             **MR. CHURCHWELL:** The math has come up a little

17     bit, Your Honor, since those were printed.

18             **THE COURT:** Work on it.  Okay?  Can you say yes?

19     Uh-oh, I got her to smile.  She started to smile.  She

20     did.  Get back to school.

21             **MR. CHURCHWELL:** May I be dismissed?

22             **THE COURT:** Yes.

23             **THE COURT:** Thank you, sir.

24             **(THEREUPON, the hearing was concluded.)**

25

```
STATE OF ARKANSAS              §
                               §
COUNTY OF HOT SPRING           §
```

### CERTIFICATE OF REPORTER

I, LECA LEDBETTER, Official Circuit Court Reporter for the Circuit Court, Seventh Judicial Circuit of Arkansas, certify that I recorded the proceedings by stenomask recording in the case of **STATE OF ARKANSAS versus DAYZHAH SMITH; KATELYN WEBB, mother; Grant County Circuit No. JV-2016-94-1, (September 20, 2017),** before the Honorable Chris E Williams, Circuit Judge thereof, at Sheridan, Grant County, Arkansas; that said recording has been reduced to a transcription by me, and the foregoing pages numbered _____56_____ through ____59____ constitute a true and correct transcript of the proceedings held to the best of my ability, along with all items of evidence admitted into evidence.

WITNESS my hand and seal as such Court Reporter on this ____4ᵗʰ____ day of ___October___, 2017.

LECA LEDBETTER
Supreme Court C.C.R. #527
210 Locust Street
Malvern, Arkansas 72104
(501) 337-7651

60

Exhibit B  page61 of 61