IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KATELYN WEBB, as guardian and next
friend of K.S. and D.S.; and JERIMEY LAY
and TABITHA LAY, as guardians and next
friends of R.L. and C.L. on behalf of themselves
and all others similarly situated

PLAINTIFFS

v.   No. 4:17CV00660 JLH

CHELSEA SMITH; STACY HOUCK;
MISCHA MARTIN; and CINDY GILLESPIE
individually and in their official capacities

DEFENDANTS

**OPINION AND ORDER**

The parents of children taken into temporary protective custody by the State of Arkansas bring this class action against state officials of the Division of Children and Family Services of the Department of Human Services ("DHS") in their individual and official capacities alleging violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983. The state officials have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). For the following reasons, the motion is granted in part and denied in part.

**I.**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The Court accepts as true all of the factual allegations contained in the complaint and draws all reasonable inferences in favor of the nonmoving party. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014). The complaint must contain more than labels, conclusions, or a formulaic recitation of the elements of a cause of action, which means that the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.

## II.

The plaintiffs allege three categories of federal claims: (1) Webb and the Lays claim separately from the class that the seizures of their children were unconstitutional; (2) Webb and the Lays claim separately from the class that they were deprived of an opportunity to be heard in a timely manner after the seizures; and (3) Webb and the Lays claim on behalf of themselves and the proposed class that the Arkansas statutes governing the provision of post-deprivation hearings to parents of seized children are constitutionally deficient. The statutes at issue are Ark. Code Ann. § 12-18-1001, which authorizes taking children into protective custody for up to 72 hours without a hearing, and Ark. Code Ann. § 9-27-314, which governs the pertinent court procedures.

The amended class action complaint alleges the following facts. Katelyn Webb is a mother of two. On June 28, 2017, a juvenile court jailed her for contempt and DHS seized her children. Webb was released from jail on July 3. Document #1-2 at 61. Chelsea Smith, a Family Services Worker, petitioned the court on July 5 for an ex parte order for emergency custody. Smith alleged that Webb was incarcerated and that no relative or friend was willing or able to take temporary custody of the children. The court entered the order on July 5 and set a probable cause hearing for July 12. Smith sent a text message to Webb on July 11 informing her that the court cancelled the hearing. The court reset the hearing for July 20. Webb appeared and informed that court that she

did not want appointed counsel. The court continued the hearing until July 26, when the court found that probable cause existed for removal of the children from Webb's custody at the time they were seized. The court did not find that the children were neglected and restored custody to Webb.

Jerimey and Tabitha Lay have three children. On May 1, 2017, DHS seized the children based on a suspicion of abuse or neglect. Stacy Houck, a Family Services Worker, petitioned the court on May 3 for an ex parte order for emergency custody. The court entered the order on May 5 and set a probable cause hearing for May 8. The hearing did not conclude on May 8 and the court ordered that the children be returned to Tabitha on May 10 unless the attorney ad litem objected. The attorney ad litem objected and the court set the conclusion of the hearing for May 12. After the hearing, the children were returned to Tabitha pursuant to a safety plan by which the Lays were to keep DHS apprised of the children's whereabouts. Jerimey was not permitted to have any contact with the children and was not allowed to stay at the home.

Cindy Gillespie is the Director of DHS. Mischa Martin is the Director of the Division of Children and Family Services. The amended class action complaint alleges that Gillespie and Martin approved and ratified the actions of Smith and Houck, and failed to properly train and supervise DHS employees.

### III.

The defendants maintain that the plaintiffs do not have Article III standing. The "irreducible constitutional minimum" of standing consists of three elements. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). "The plaintiffs must have (1) suffered an injury in fact, (2) that is fairly traceable to the conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016). The plaintiff has the burden of establishing these elements, which

at the pleading stage may be met by clearly alleging facts demonstrating each element. *Warth v. Seldin*, 422 U.S. 490, 498-99, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). It is established that parents have a fundamental right to the custody of their children and the deprivation of that right is an injury in fact. The issue concerns the second element. The defendants argue that they did not cause the injuries the plaintiffs allege.

The amended complaint alleges that DHS seized the plaintiffs' children prior to the juvenile courts' ex parte orders. Then, post-deprivation hearings were not held in a timely manner. The defendants note that they were not present at any hearings, nor do they have the authority to cancel or schedule hearings. Document #17 at 3. However, the seizure of the children did lead to the court proceedings, the amended complaint alleges that the seizure of the Lays' children was unlawful, and the amended complaint alleges that Smith did not petition the court for emergency custody within the time required under Arkansas law. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561, 112 S. Ct. at 2137. The alleged injuries can fairly be traced to the defendants. Based on the allegations in the amended complaint, the plaintiffs have Article III standing to seek damages for the seizures of their children and the alleged lack of due process following those seizures.

Although the plaintiffs have standing to seek damages for the seizures of their children and the lack of due process, it is not clear that they have standing to challenge the constitutionality of the statutes at issue. The third element of the standing test—redressability—presents a hurdle to them because "[t]he alleged injury—[Arkansas's] temporary removal of their children—has already occurred and will not necessarily occur again." *Doe v. Kearney*, 329 F.3d 1286, 1292 (11th Cir. 2003). In *Kearney*, the court found that the redressability element was met because the record

4

indicated the likelihood that the plaintiffs would encounter similar state action under the statute in the future. *Id*. at 1293. Nothing of the sort is alleged here.

The redressability issue is closely related to a second issue that the parties have not raised but which the Court has an obligation to raise *sua sponte*, and that is the issue of mootness. The plaintiffs' challenges to the constitutionality of Ark. Code Ann. § 12-18-1001 and § 9-27-314 raise the question of whether there is a live case or controversy, as well as whether the plaintiffs have established redressability. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669, 193 L. Ed. 2d 571 (2016). Article III prohibits a court from hearing claims that are moot. *Life Investors Ins. Co. of Am. v. Fed. City Region, Inc.*, 687 F.3d 1117, 1121 (8th Cir. 2012). "For a declaratory judgment to issue, there must be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'" *Ashcroft v. Mattis*, 431 U.S. 171, 172, 97 S. Ct. 1739, 1740, 52 L. Ed. 2d 219 (1977) (quoting *Aetna Life Ins Co. v. Haworth*, 300 U.S. 227, 242, 57 S. Ct. 461, 465, 81 L. Ed. 617 (1937)); *see also MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 126-33, 127 S. Ct. 764, 770-75, 166 L. Ed. 2d 604 (2007) (explaining the case-or-controversy requirement as it relates to the Declaratory Judgment Act). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding [declaratory] relief . . . if unaccompanied by any continuing, present adverse effects." *Simes v. Ark. Judicial Discipline and Disability Comm'n*, 734 F.3d 830, 835 (8th Cir. 2013) (holding that requests for declaratory relief were moot) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974)).

The plaintiffs claim to have suffered from the defendants' unconstitutional practices, which they allege were permitted by the challenged statutes. Section 12-18-1001(b) authorizes certain DHS employees to take children into custody without the consent of the parents for up to 72 hours

5

and §§ 9-27-314 and 315 mandate that the circuit courts issue ex parte orders for emergency custody to remove children from the custody of the parents if certain circumstances are present and then provide a hearing within five days. The plaintiffs lack a legally cognizable interest in whether these statutes pass constitutional muster. The alleged injuries—the temporary removal of the plaintiffs' children by DHS officials and the subsequent delay in judicial review—have already occurred and the amended complaint does not allege that Webb and the Lays are at risk of these injuries occurring again. There is no threatened action by DHS against Webb or the Lays. Therefore, there is no live case or controversy and the plaintiffs have failed to establish that the requested declaratory judgment will redress the constitutional injuries alleged.

The same result obtains with respect to the plaintiffs' claims for injunctive relief. The Eleventh Amendment bars suits brought against a state, state agency, or state officials acting in their official capacities in federal courts by her own citizens, as well as those of another State. *Edelman v. Jordan*, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 1355, 39 L. Ed. 2d 662 (1974); *Seminole Tribe v. Florida*, 517 U.S. 44, 74, 116 S. Ct. 1114, 1132, 134 L. Ed. 2d 252 (1996). Nonetheless, under the *Ex Parte Young* doctrine, a plaintiff may file suit against state officials acting in their official capacities seeking prospective injunctive relief for ongoing violations of federal law. *Seminole Tribe*, 517 U.S. at 74, 116 S. Ct. at 1132. Webb and the Lays concede that the Eleventh Amendment bars claims for money damages under § 1983 against the defendants in their official capacities but maintain that the *Ex Parte Young* exception applies in this case.

To determine whether *Ex Parte Young* applies, the Court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002) (quoting *Idaho v. Coeur d'Alene*, 521

6

U.S. 261, 296, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997)). Webb and the Lays request injunctive relief requiring Martin and DHS to provide a post-deprivation hearing within three days after children are seized or within another appropriate time to be set by the Court. *Id*. at 11, ¶ 43. There is no ongoing violation of federal law; this is a case in which federal law is alleged to have been violated over a period of time in the past. Custody was restored to the plaintiffs after post-deprivation hearings. *Ex Parte Young* does not apply and the defendants are entitled to sovereign immunity in their official capacities.[1]

## IV.

The plaintiffs claim that the seizures of their children violated the First, Fourth, and Fourteenth Amendments. Smith seized Webb's children when a juvenile court jailed her for contempt and no appropriate relative or friend was available to care for the children. Houck seized the Lays' children based on suspicion of abuse or neglect. A designated employee of DHS may take a child into custody for up to 72 hours without the consent of the parent if the child is neglected, dependent, or in immediate danger. Ark. Code Ann. § 12-18-1001. If there is probable cause to believe that immediate emergency custody is necessary to protect the health or physical well-being of the child, the circuit court shall issue an ex parte order for emergency custody removing the child from the custody of the parent. Ark. Code Ann. § 9-27-314(a)(1). The amended complaint alleges

---

[1] The defendants also argue that this action should be dismissed because the plaintiffs failed to notify the Attorney General of their constitutional challenges to Arkansas statutes as required by Ark. Code Ann. § 16-111-106(b). The plaintiffs correctly observe that that statute is a state rule of procedure which does not apply in federal court. The issue under the federal rules would be whether all of the required parties have been joined pursuant to Federal Rule of Civil Procedure 19, and that issue hinges "on whether effective relief could be awarded on the basis of those officials actually before the court." Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice & Procedure: Civil 3d § 1617 (2001). Even if the claims were not otherwise dismissed, it does not appear that the Court could give effective relief with respect to the constitutionality of Ark. Code Ann. §§ 9-27-314 and 315 inasmuch as those statutes govern court procedures over which the named defendants have no control.

that emergency ex parte orders were entered in Webb's case and in the Lays' case, which gave temporary custody of the children to DHS. Document #12 at 3, 5, ¶¶ 6, 19. Webb and the Lays attack those orders, maintaining that they were based on false allegations. *Id*. at 3, 12, ¶¶ 6, 59-60.

The *Rooker-Feldman* doctrine bars state court losers from obtaining federal review of state court judgments. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005); *Karsjens v. Piper*, 845 F.3d 394, 406 (8th Cir. 2017). The doctrine only applies when "the federal suit is commenced after the state court proceedings have ended." *Dornheim v. Sholes*, 430 F.3d 919, 923 (8th Cir. 2005). District courts lack subject matter jurisdiction over challenges to state court decisions in judicial proceedings, with the exception of habeas corpus petitions. *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995) (citing *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S. Ct. 1303, 1311, 75 L. Ed. 2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S. Ct. 149, 150, 68 L. Ed. 362 (1923)). "The doctrine precludes district courts from obtaining jurisdiction both over the rare case styled as a direct appeal, [*Rooker*, 263 U.S. at 416, 44 S. Ct. 149], as well as more common claims which are 'inextricably intertwined' with state court decisions. [*Feldman*, 460 U.S. at 483, 103 S. Ct. 1303]." *Simes v. Huckabee*, 354 F.3d 823, 827 (8th Cir. 2004).

Based on the amended complaint, the state-court proceedings are complete for *Rooker-Feldman* purposes. *See Dornheim*, 430 F.3d at 924 (holding that preclusion law, not the *Rooker-Feldman* doctrine, applies when state-court proceedings are incomplete). An ex parte order for emergency custody is not a final, appealable order under Arkansas Supreme Court Rule 6-9(a); *Harris v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 508, 5, 470 S.W.3d 316, 319 (refusing to address grandmother's argument on appeal that no emergency existed at the time DHS took emergency custody of the grandchild). However, the juvenile court entered its adjudication order

in Webb's case on July 26, 2017, and the juvenile court entered its adjudication order in the Lays'case on May 12, 2017. An adjudication order in a child custody case is a final appealable order. Ark. R. App. P. 2(c)(3)(A). The designated time for appeal has run out. Ark. R. App. P. 4(a). Therefore, the proceedings are complete.

Webb alleges that Smith lied to the court about whether she was incarcerated and whether there was an appropriate friend or relative to care for the children. Document #12 at 3, ¶ 5. The Lays allege that Houck did not have reasonable suspicion of child abuse or neglect, but she petitioned the court for emergency custody anyway. *Id*. at 15, ¶ 60. The juvenile courts, based on state law and the allegations presented to them by Smith and Houck in the emergency petitions, issued ex parte emergency custody orders temporarily stripping the plaintiffs of custody. Then, the juvenile court entered an adjudication order in Webb's case finding that probable cause existed at the time of removal. Document #12 at 5, ¶ 13. In the Lays' case, the court allowed the children to return home with the mother under a safety plan, an element of which required Mr. Lay to reside outside the home and have no contact with the children. *Id*. at 6, ¶ 22. Although the complaint does not explicitly allege that the juvenile court found probable cause for Houck's seizure of the three Lay children, that the court required the safety plan necessarily means that the court determined that probable cause for the seizure existed. By suing in federal court for money damages on grounds that the seizures of their children violated their federal due process rights as parents, the plaintiffs are complaining of an injury caused by the state court judgments. *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 87-88 (2d Cir. 2005) (explaining when *Rooker-Feldman* applies). Because whether the plaintiffs are entitled to relief hinges upon this Court finding that the emergency ex parte orders and the adjudication orders were wrongly decided, the claims are inextricably intertwined with the state court decisions. *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir.

9

2001). The same is true of the Lays' claim that the final order violated their right of association and their right to parent: those claims are inextricably intertwined with the state court decisions. Only the Supreme Court may hear appeals from state-court judgments.

Finally, the Eighth Circuit has stated that for *Rooker-Feldman* to apply, the plaintiffs must have had a reasonable opportunity to present their claims in an earlier state proceeding. *See Niere v. St. Louis Cnty., Mo.*, 305 F.3d 834, 837 (8th Cir. 2002). The juvenile division of the circuit court is a trial court of general jurisdiction and, as such, may entertain constitutional challenges. *See* Ark. Const. amend. 80, § 6; *Abram v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 437, 4, 502 S.W.3d 553, 567. Webb and the Lays were parties to their respective juvenile court proceedings and they allege that they participated in those proceedings. *See Hoblock*, 422 F.3d at 89. They had a reasonable opportunity to challenge the truthfulness of the DHS officials' allegations and the ex parte emergency orders in the juvenile courts. Therefore, this Court does not have jurisdiction over the defendants' claim that the initial act of removing the plaintiffs' children without a prior court order violated the plaintiffs' due process rights. *Cf. Goodman*, 259 F.3d at 1334-35 (applying *Rooker-Feldman* to juvenile proceedings similar to those here); *Johnson v. Missouri Dep't of Soc. Servs.*, No. 15-CV-00391-DGK, 2016 WL 6542722 (W.D. Mo. Nov. 2, 2016) (same); *Ford v. Hermanson*, 755 F. Supp. 2d 1028 (D.N.D. 2010) (same).

Next, the plaintiffs claim that the failures to provide prompt post-deprivation hearings violated their rights to procedural due process guaranteed by the Fourteenth Amendment. The *Rooker-Feldman* doctrine does not bar the Court's consideration of this claim because it does not call into question a state court judgment. The due process clause of the Fourteenth Amendment says, in relevant part, that no state shall "deprive any person of . . . liberty . . . without due process of law." U.S. Const. amend. XIV, § 1. Webb alleges that Smith seized her children on June 28,

2017, but that the probable cause hearing did not take place until July 26. The Lays allege that Houck seized their children on May 1, 2017, but the probable cause hearing did not begin until May 8 and did not conclude until May 12. The Eighth Circuit explained what is necessary to state a claim for procedural due process:

> "To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law." *Gordon*, 168 F.3d at 1114 (internal citation omitted). "Due process is a flexible concept, requiring only 'such procedural protections as the particular situation demands.'" *Clark v. Kan. City Mo. Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)). "The fundamental requirement of due process 'is the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Mathews*, 424 U.S. at 333, 96 S. Ct. 893).

*Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 817-18 (8th Cir. 2011). The plaintiffs have shown that the state infringed on a cognizable liberty interest. "As a general matter, parents have a liberty interest in the 'care, custody, and management of their children.'" *Swipies v. Kofka*, 419 F.3d 709, 713 (8th Cir. 2005) (quoting *Manzano v. South Dakota Dep't of Soc. Servs.*, 60 F.3d 505, 509-10 (8th Cir. 1995)). This interest is limited by the state's compelling interest in protecting minor children and when emergency circumstances are present, a child may be removed from a parent's custody without prior judicial authorization. *See Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997). The defendants argue they are entitled to qualified immunity from any claim that the plaintiffs were deprived of procedural due process.

A state official sued in his individual capacity may invoke the affirmative defense of qualified immunity. *See Harrington v. City of Council Bluffs, Iowa*, 678 F.3d 676, 679 (8th Cir. 2012). Qualified immunity "will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Weaver v. Clarke*, 45 F.3d 1253, 1255 (8th Cir. 1995).

11

The Supreme Court has characterized qualified immunity as "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). Qualified immunity balances the need to hold public officials accountable with the need to shield those officials from harassment, distraction, and liability when they act reasonably, which is why "the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Id.* (internal quotation marks omitted).

A two-step inquiry determines whether a government official is entitled to qualified immunity: "(1) [whether] the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right[ ] and (2) [whether] the right was clearly established at the time of the deprivation." *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir.2012) (quoting *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir.2010)). "The defendants are entitled to qualified immunity unless the answer to both of these questions is yes." *Winslow v. Smith*, 696 F.3d 716, 731 (8th Cir.2012) (quoting *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir.2012)). Courts may address either step first. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009). The right to a prompt post-deprivation hearing was clearly established at the time DHS took temporary, emergency custody of the children. The issue is whether the facts demonstrate the deprivation of a constitutional or statutory right.

Arkansas law provides that "[f]ollowing the issuance of an emergency order, the circuit court shall hold a probable cause hearing within five (5) business days of the issuance of the ex parte order to determine if probable cause to issue the emergency order continues to exist." Ark. Code Ann. § 9-27-315(a). This statute does not determine what process is due under the constitution. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985); *Swipies*,

419 F.3d at 716. Generally, due process entitles a person deprived of a liberty interest to notice and an opportunity to be heard. *Mathews*, 424 U.S. at 348, 96 S. Ct. at 909. Here, the issue is an opportunity, post-deprivation, to be heard. Webb alleges that the court did not hold a probable cause hearing until 21 days after the ex parte order and the Lays allege that the court did not complete a probable cause hearing until seven days after the ex parte order. The hearing in Webb's case was clearly held outside of the time frame provided in the statute. The hearing in the Lays' case clearly concluded outside of the time frame provided in the statute. However, the defendants did not have the authority to set hearings. The amended complaint repeatedly alleges that the *court* rescheduled or delayed the hearings. Document #12 at 4, ¶¶ 10-11, 12, 19-22. The Lays were represented by counsel who objected to the timeliness of the post-deprivation hearing. *Id.* at 12, ¶ 20.

The state courts involved are not parties to this action. While the plaintiffs complain that the defendants employed a "will-call policy" pursuant to which they waited passively for the court to schedule hearings, they cite to no authority in the child custody context dictating that child services workers have an affirmative duty to ensure the court schedules prompt hearings.[2] *Id.* at 4, ¶ 10. The defendants are entitled to qualified immunity from any constitutional claim based on the delayed probable cause hearings.

It is within the defendants' responsibility and authority, however, to initiate judicial proceedings promptly once a child has been seized: "When the state deprives parents and children of their right to familial integrity, even in an emergency situation, without a prior due process

---

[2] The plaintiffs rely on *Hayes v. Faulkner Cnty., Ark.*, 388 F.3d 669, 674 (8th Cir. 2004), in which the Eighth Circuit held that Faulkner County's policy of submitting the names of pre-appearance detainees to the court and then waiting for the court to schedule a hearing was deliberately indifferent to detainees' due process rights. The issue was a pretrial detainee's right to a prompt appearance in court after arrest by warrant. The individual defendant in *Faulkner*, a jailer, was required by Arkansas law to ensure that a pretrial detainee appeared before a judge without unnecessary delay.

hearing, the state has the burden to initiate prompt judicial proceedings to provide a post deprivation hearing." *Whisman*, 119 F.3d at 1311; *see also K.D. v. Cnty. of Crow Wing*, 434 F.3d 1051, 1056, n.6 (8th Cir. 2006) (acknowledging the state's burden to initiate prompt judicial proceedings when a child is removed from parental custody without a court order). The amended complaint alleges that Smith did not initiate judicial proceedings until seven days after DHS took custody of Webb's children. Document #12 at 3, ¶ 5. Houck, however, initiated judicial proceedings just two days after DHS took custody of the Lays' children. *Id*. at 5, ¶ 19.

As explained, under Arkansas law a DHS employee initiates judicial proceedings by filing with the circuit court a petition for emergency custody. A designated employee of DHS may take a child into state custody for up to 72 hours without the consent of the parent if the child is neglected, dependent, or in immediate danger. Ark. Code Ann. § 12-18-1001. Upon the filing of a petition by a designated employee of DHS, the circuit court shall issue an ex parte order for emergency custody removing the child from the custody of the parent if there is probable cause to believe that immediate emergency custody is necessary to protect the health or physical well-being of the child. Ark. Code Ann. § 9-27-314(a)(1). The ex parte order includes notice to the parents named in the petition of the right to a hearing and that a hearing will be held within five business days of the issuance of the ex parte order. Ark. Code Ann. § 9-27-314(b)(1).

The amended complaint alleges that Webb's children were in DHS custody for approximately seven days before Smith filed a petition in the juvenile court, triggering notice to Webb of her right to a hearing. Smith failed to meet her burden to initiate prompt judicial proceedings to ratify her decision to take emergency custody of Webb's children and notify Webb of her right to a hearing. *See Gomes v. Wood*, 451 F.3d 1122, 1128 (10th Cir. 2006) (collecting authority). Seven days is too long for a parent to wait after her child has been removed to receive

14

notice of her rights under the law. *See Swipies*, 419 F.3d at 715 (reasoning that if seven days is too long for a car owner to wait for a post-deprivation hearing after his or her car has been towed and impounded, then a parent should not have to wait seventeen days after his or her child has been removed for a hearing). Webb has sufficiently alleged that she did not receive all of the processes to which she was entitled under the Fourteenth Amendment. Smith is not entitled to qualified immunity from Webb's procedural due process claim. Houck, however, is entitled to qualified immunity from the Lays' procedural due process claim. The amended complaint alleges that the Lays' children were only in DHS custody for approximately 48 hours before Houck filed a petition with the court, which is a reasonable amount of time.

Webb also maintains that Martin and Gillespie, as supervisory officials, are liable for Smith's failure to initiate prompt judicial proceedings. Document #12 at 6-7, 15, ¶¶ 23-30, 63-64. Claims based on respondeat superior are not cognizable under section 1983. *Pearl v. Dobbs*, 649 F.2d 608, 609 (8th Cir. 1981). However, a supervisory official may be liable based on a theory of direct liability if that official fails to properly train, supervise, direct or control the actions of a subordinate who causes injury. *See Whisman*, 119 F.3d at 1311. Webb alleges that Martin and Gillespie knew about, approved, ratified, and encouraged Smith's actions, and trained DHS officials like Smith to act the way she is alleged to have acted in this case. Document #12 at 15-20, ¶¶ 63-80. The Court must accept the facts alleged in the amended complaint as true. Qualified immunity is not established on the face of the amended complaint. *See Weaver*, 45 F.3d at 1255. Webb's § 1983 claims against Martin and Gillespie based on their failure to properly train, supervise, direct or control the actions of Smith who caused injury to Webb when she allegedly failed to initiate prompt judicial proceedings survives the motion to dismiss.

## CONCLUSION

For the foregoing reasons, the motion to dismiss the amended complaint is GRANTED IN PART and DENIED IN PART. All of the claims of Jerimey Lay and Tabitha Lay are dismissed. All claims against Stacy Houck, individually and in her official capacity, are dismissed. All of Katelyn Webb's claims against Chelsea Smith, Mischa Martin, and Cindy Gillespie, individually and in their official capacities, are dismissed except her claims against them in their individual capacities for failure to initiate prompt judicial proceedings.

IT IS SO ORDERED this 20th day of March, 2018.

*J. Leon Holmes*

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE