IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KATELYN WEBB, as guardian and next                                          PLAINTIFFS
friend of K.S. and D.S.; and JERIMEY LAY
and TABITHA LAY, as guardians and next
friends of R.L. and C.L. on behalf of themselves
and all others similarly situated

v.                          No. 4:17CV00660 JLH

CHELSEA SMITH; STACY HOUCK;
MISCHA MARTIN; and CINDY GILLESPIE
individually and in their official capacities                               DEFENDANTS

**OPINION AND ORDER**

Katelyn Webb and Jerimey and Tabitha Lay—parents of children taken into temporary protective custody by the State of Arkansas—brought this class action against Chelsea Smith, Stacy Houck, Mischa Martin, and Cindy Gillespie—state officials of the Division of Children and Family Services of the Department of Human Services ("DHS")—in their individual and official capacities alleging violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983. Smith is a social worker who was assigned to the Webb case. Houck is a social worker who was assigned to the Lay case. Martin and Gillespie are DHS supervisors. The plaintiffs alleged four categories of federal claims: (1) Webb and the Lays claimed separately from the class that the seizures of their children were unconstitutional; (2) Webb and the Lays claimed separately from the class that they were deprived of an opportunity to be heard in a timely manner after the seizures; (3) Webb and the Lays allege that Martin and Gillespie are liable for failing to train and supervise Smith and Houck properly and for establishing *de facto* policies that led to the alleged constitutional violations; and (4) Webb and the Lays claimed on behalf of

themselves and the proposed class that the Arkansas statutes governing the provision of post-deprivation probable cause hearings to the parents of seized children are constitutionally deficient.

The defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), which the Court granted in part and denied in part. Document #34. The Court dismissed all of the Lays' claims and all of the claims against Stacy Houck, individually and in her official capacity. The Court dismissed all of Webb's claims against Smith, Martin, and Gillespie, individually and in their official capacities, except her claims against them in their individual capacities for failure to initiate prompt judicial proceedings. Now the plaintiffs have filed a motion to alter or amend the order and a motion for leave to file an amended complaint. The defendants have responded, also asking the Court to alter or amend the order, and arguing the plaintiffs' proposed amendments to the complaint are futile. For the following reasons, the plaintiffs' motion is denied, and this action is dismissed in its entirety.

**I.**

When no final judgment has been entered, motions to alter or amend orders—also called motions for reconsideration—are governed by Federal Rule of Civil Procedure 54(b). Rule 54(b) provides that any order that adjudicates fewer than all of the claims of fewer than all of the parties is subject to revision at any time before the entry of judgment adjudicating all of the claims and the rights and liabilities of all of the parties. Fed. R. Civ. P. 54(b). Here, the Court's opinion at issue was an interlocutory order adjudicating all of the claims except for Webb's claims against Smith, Martin and Gillespie in their individual capacities for failure to initiate prompt judicial proceedings. The Court has broad discretion to reconsider it under Rule 54(b). *Wells' Dairy, Inc. v. Travelers*

*Indem. Co. of Illinois*, 336 F. Supp. 2d 906, 909 (N.D. Iowa 2004).  The Court has reconsidered its prior order *de novo*.

Whether to grant the plaintiffs leave to amend is governed by Federal Rule of Civil Procedure 15(a)(2), which provides that courts should freely give leave to amend when justice so requires. Leave to amend may be denied when the proposed amendment would be futile.  *Geier v. Missouri Ethics Comm'n*, 715 F.3d 674, 678 (8th Cir. 2013).  Here, the proposed amendments primarily address the issue of whether the plaintiffs have standing to challenge the constitutionality of the Arkansas statutes.  For reasons that will be explained, leave to amend will be denied because the proposed amendment would be futile.

In conjunction with their response to the plaintiffs' motion, the defendants filed under seal portions of the record of the earlier state court proceedings in the circuit courts of White County and Grant County.  The plaintiffs object to the Court considering those documents "except to the extent that they demonstrate that no final, appealable, adjudication order was ever entered."  Document #55 at 2.  Yet, the complaint, first amended complaint and proposed second amended complaint are replete with references to those same court proceedings, and the plaintiffs attached copies of transcripts of some of the state court proceedings in the Webb case to their complaint.  *See* Document #1-2, Document #12 at 7, ¶29, and Document #39-1 at 7, ¶29.  The Eighth Circuit has explained:

> While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;" without converting the motion into one for summary judgment.

3

*Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Wright & Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)). The plaintiffs were parties to those proceedings and the documents are certified copies of the state court records, which are public records. Ark. Code Ann. § 25-19-103(7)(A). Those state court records are integral to the plaintiffs' claims. Therefore, the Court may and will consider them.

## II.

The plaintiffs first argue the Court erred in holding that they did not have standing to pursue their claims challenging the constitutionality of Ark. Code Ann. § 12-18-1001, § 9-27-314 and § 9-27-315, and that those claims were moot. Document #39 at 2, ¶ 4. They rely on *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 94 S. Ct. 1694, 40 L. Ed. 2d 1 (1974), where the United States Supreme Court examined the capable of repetition, yet evading review doctrine—an exception to mootness—as it applies to declaratory actions. *See South Dakota v. Hazen*, 914 F.2d 147, 150 (8th Cir. 1990). In *Super Tire*, a strike ended before employers could challenge New Jersey's policy of providing welfare assistance to workers on strike. The Supreme Court held that even though the strike had ended, the employers' request for declaratory relief was not moot: "[T]he facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. at 122, 94 S. Ct. at 1698 (internal quotation omitted). The Court also noted that the ongoing challenged policy, by its "continuing and brooding presence, casts . . . a substantial adverse effect on the interests of the petitioning parties." *Id*.

One year after its decision in *Super Tire*, the Supreme Court held that a former state prisoner could not challenge the state's parole procedures because he was no longer in prison and therefore,

4

no longer had a present interest in parole policies. *Weinstein v. Bradford*, 423 U.S. 147, 148, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975). The Supreme Court distinguished *Bradford* from *Super Tire*, noting that "the posture of the parties was quite different" in *Super Tire* because the "employer was engaged in cyclically recurring bargaining with the union representing its employees, and respondent state official was continuously following a policy of paying unemployment compensation benefits to strikers." *Id*.

To show a present interest, the plaintiffs propose a second amended complaint in which they allege that Webb is of childbearing age and still subject to the supervision of the court; that the Lays are still capable of having children; and that once a family has had a proceeding with DHS, that family has an increased likelihood of future dealings with DHS. Document #39-1 at 2, 5 ¶¶2, 26.

As noted above, the record now includes pleadings and orders from the state court proceedings. As to the Lays, those proceedings began when a serious charge of abuse was asserted against Jerimey. An order was eventually entered dismissing the case but with the provision that DHS would maintain a protective services case on the Lays. Hence, so far as the record shows, the Lays remain under the cloud of a DHS protective services case.

Webb's DHS case began in juvenile court with allegations that her child was repeatedly truant. The plaintiffs filed transcripts of the truancy proceedings with their complaint. Document #1-2. Those transcripts show that Webb repeatedly failed to take her child to school and repeatedly brought the child to school late, even after being admonished by the juvenile court and warned of potential contempt. Webb also failed to attend scheduled hearings and, when she did attend, at times was late. She ultimately was held in contempt of court for failing to comply with orders to take her child to school and for failure to appear. The exhibits filed under seal by the defendants include

Smith's affidavit filed in support of a petition for emergency protective custody of Webb's children. That affidavit says, among other things, that Webb's children had previously been removed from her care and placed in foster care due to inadequate supervision and drug usage on at least one prior occasion, and that allegations of inadequate supervision had been made against her on other occasions.

Based on these facts, Webb and the Lays have established a reasonable likelihood that they may be subject to having their children taken into protective custody by DHS in the future. Hence, they have standing to challenge the constitutionality of the relevant Arkansas statutes. The issue is now whether those statutes are unconstitutional. The plaintiffs contend that the statutes are unconstitutional because they do not provide for a prompt hearing after children have been taken in protective custody by DHS.

Arkansas Code Annotated § 12-18-1001 authorizes law enforcement personnel and designated employees of DHS to take a child into protective custody for a period not to exceed seventy-two hours under certain circumstances, including where there is immediate danger to the health or physical well-being of the child in the care, custody, or control of the parent. When an employee of DHS takes a child into custody under that statute, the employee must provide notice to the parent of the action taken, the rights of the child and the parent, and the procedures for obtaining a hearing. Ark. Code Ann. § 9-27-313(c). When there is probable cause to believe that immediate emergency custody is necessary to protect the health or physical well-being of a child from immediate danger, the circuit court can issue an *ex parte* order for emergency custody to remove the child from the custody of the parent. Ark. Code Ann. § 9-27-314(a)(1). Immediate notice of the emergency order must be given by the petitioner or by the circuit court to the parent. *Id*.

§ 314(c)(1)(A). The defendants must be served with an emergency order according to the Arkansas Rules of Civil Procedure. *Id.* § 314(c)(3). The statute directs the circuit court to hold a probable cause hearing within five business days of the issuance of the *ex parte* order. Ark. Code Ann. § 9-27-315(a)(1)(A). Webb and the Lays argue that these statutes, taken together, permit a child to be taken up to seventy-two hours without a court order, followed by five business days if the circuit court issues an emergency order. During a typical week, the seventy-two hours plus the five business days could result in the child being taken from the parent for a total of ten days before the statute requires a hearing to be conducted. If a holiday intervenes, that time could be extended to eleven days.

It is well established that parents have a right to a prompt hearing after their child is taken into protective custody. *Whisman v. Rinehart*, 119 F.3d 1303, 1310 (8th Cir. 1997); *see also Swipies v. Kofka*, 419 F.3d 709, 715 (8th Cir. 2005). No bright-line rule exists, however, for deciding whether a post-deprivation hearing is sufficiently prompt. *Brown v. Daniels*, 128 F. App'x 910, 915 (3rd Cir. 2005). The Eighth Circuit said in *Whisman* that "seventeen days was not a prompt hearing" under those facts. 119 F.3d at 1310; *see also Swipies*, 419 F.3d at 715.

Here, the plaintiffs assert a facial challenge to the Arkansas statutes, which provide for judicial review, albeit on an *ex parte* basis, within seventy-two hours after a child is taken into protective custody, to be followed by a hearing within five business days thereafter. There is no binding authority on point and this Court will not, under the guise of interpreting the constitution, create a rule that would render the Arkansas statutes facially invalid. *See United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100, 95 L. Ed. 2d 697 (1987) (explaining that facial challenges to legislative acts are "the most difficult challenge to mount successfully"); *United States v.*

*Stephens*, 594 F.3d 1033, 1037 (8th Cir. 2010) (explaining that the "Supreme Court takes a dim view of facial challenges").

### III.

Next, the plaintiffs take issue with the Court's characterization of their procedural due process claims. Document #40 at 7-10. The Court held that the defendants, individually, were not liable for any violation of procedural due process arising out of the state court's failure to hold a timely probable cause hearing. Document #34 at 13-14. Because responsibility for conducting a prompt hearing lies in the circuit court, not the DHS social worker, the Court looked to whether the defendants promptly initiated judicial proceedings after the children were seized. *Id.* The Court dismissed the Lays' claims against Houck because the state filed a petition for emergency custody just two days after DHS seized the Lays' children. Webb's claim against Smith was allowed to proceed.

The Eighth Circuit explained in *Whisman*: "When the state deprives parents and children of their right to familial integrity, even in an emergency situation, without a prior due process hearing, the state has the burden to initiate prompt judicial proceedings to provide a post-deprivation hearing." 119 F.3d at 1311. Thus, the plaintiffs argue that "[t]he key part of the timeliness issue is not when judicial process is instituted, but when the hearing occurs." Document #40 at 8. It is true that due process entitles a parent deprived of her child notice and an opportunity to be heard, and that a probable cause hearing is the parent's opportunity to be heard. *See Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 817-18 (8th Cir. 2011). Still, the question is what the defendants in this case were required to do in order to ensure the plaintiffs received due process. Under Arkansas law, the circuit court, not the DHS social worker, is charged with providing a hearing: "Following the

issuance of an emergency order, *the circuit court shall hold a probable cause hearing* within five (5) business days of the issuance of the *ex parte* order to determine if probable cause to issue the emergency order continues to exist." Ark. Code Ann. § 9-27-315(a) (emphasis added). The defendants did not have the authority to schedule a probable cause hearing, nor is there any allegation or indication in the court records that the defendants caused any delay in conducting the probable cause hearings.

The relevant chronology for the Webb case is as follows. On June 28, 2017, the Circuit Court of Grant County, Arkansas, Juvenile Division, held Webb in contempt of court, sentenced her to five days in jail beginning immediately, and ordered DHS to take the children. Document #1-2 at 57-62. On June 30, 2017, Smith signed an affidavit stating the factual grounds for taking Webb's children into emergency protective custody. These grounds included the fact that the court had ordered Webb placed in jail for five days for contempt of court, that Webb had refused to complete a urine sample and that DHS had attempted to find relatives who could take the children but had been unable to do so. The affidavit stated that DHS could not complete a home assessment due to Webb's incarceration and could not determine if she was an appropriate caretaker because of her refusal to complete a urine sample. A DHS lawyer filed the petition for emergency custody on July 5, 2017. On that same date, the DHS attorney submitted to the court a precedent for a form of order for emergency custody that included a paragraph scheduling a probable cause hearing for July 12, 2017. For reasons that do not appear in the record, the circuit judge canceled the July 12 hearing. *See* Document #1-2 at 10; Document #12 at 3, ¶9. According to the first amended complaint, the probable cause hearing was then reset for July 20. *Id*. at 4, ¶10. Webb appeared on that date but declined the lawyer that the court intended to appoint to represent her and indicated that

9

she was in the process of retaining a lawyer. *Id*. at ¶11. The hearing then was continued and rescheduled for July 26. *Id*. at ¶12. At the July 26 hearing, the court found that probable cause had existed at the time of the removal. *Id*. at ¶13; Defendants' Exhibit A (filed under seal). The children were returned to Webb on that date.

As this chronology shows, Smith was not responsible for any delay in the probable cause hearing. She promptly completed the affidavit in support of the *ex parte* petition for emergency custody, but the DHS lawyer responsible for the case did not file the petition until five days after she completed her affidavit. The *ex parte* order awarding protective custody scheduled a hearing on July 12, but the court continued the hearing on its own initiative. The next hearing was scheduled for July 20, but it was continued because Webb did not accept the court-appointed counsel and intended to be represented by retained counsel. None of this delay can be attributed to Smith.

The chronology as to the Lays is as follows. According to the first amended complaint, Houck took protective custody of the three Lay children on May 1, 2017. Document #12 at 17.[1] Houck signed her affidavit stating the factual grounds for emergency protective custody on May 3, 2017. A DHS lawyer filed a petition for emergency custody on that same day. The order granting emergency custody was entered on May 5, 2017. That order scheduled a probable cause hearing on May 8, 2017. According to the first amended complaint, the probable cause hearing began on May 8 but was not completed on that date. Document #12 at 5, ¶20. The court ordered the children to remain in custody until May 10 and to be returned to their mother with a safety plan on May 10 unless the attorney ad litem objected. *Id*. at 5-6, ¶20. The attorney ad litem objected, so the court

---

[1] Houck's affidavit in support of the emergency petition for protective custody says that Tabitha Lay was offered a chance to keep the children under certain conditions, but she declined and surrendered the children to DHS. Defendants' Exhibit B (filed under seal).

10

scheduled the conclusion of the probable cause hearing for May 12. Document #12 at 6, ¶21. The probable cause hearing was concluded on May 12, and the children were returned to the Lays on that date. *Id*. at ¶22.

As with Webb's claims against Smith, the chronology of the Lays' claims against Houck shows that Houck was not responsible for the delay in conducting the probable cause hearing. Houck completed her affidavit in a timely fashion. The delay, which was minimal, was caused by the need to obtain additional evidence and then by the ad litem's objection, not by any action by Houck.

As noted above, the plaintiffs seek to hold Smith and Houck individually liable for failing to provide them with a prompt post-deprivation hearing, but the statutory authority and duty to schedule and conduct a hearing is placed in the circuit court. Neither Smith nor Houck had the authority to schedule such a hearing. At oral argument, plaintiffs' counsel argued that Smith and Houck should be held responsible for failing to take action to make sure that the circuit court fulfilled its duty in conducting a prompt hearing. He did not, however, specify what they should have done. So far as the record shows, neither Smith nor Houck is a lawyer. Plaintiffs' counsel argued that Smith and Houck, as the clients of the lawyers, had a responsibility to ensure that the lawyers took action to ensure that Webb and the Lays received prompt hearings, but Smith and Houck were not the clients: DHS was. In both cases, the plaintiff was the Arkansas Department of Human Services. Arkansas Rule of Civil Procedure 11(a) provides that every pleading, written motion, and other paper of a party represented by a lawyer must be signed by an attorney of record. Unless Smith and Houck are lawyers—which is not alleged—neither of them could file a petition

11

for emergency custody, and neither of them could file a motion for a prompt hearing. Nor was either of them a party to the proceedings with responsibility to ensure that the lawyers acted promptly.

The plaintiffs cite *Swipies v. Kofka*, 419 F.3d 709, 715 (8th Cir. 2005), in support of their argument that the defendants are liable for the delayed probable cause hearings. In *Swipies*, a deputy sheriff performed an emergency removal of a child from her father's custody. *Id.* at 713. Then, he returned the child to the custody of her mother, the father's ex-wife, but never informed the juvenile court of the removal or the change in custody. *Id.* The father filed a motion in the state court that presided over the divorce proceedings to hold the mother in contempt for her role in the child's removal. *Id.* at 715. The deputy sheriff argued that the contempt hearing, held seventeen days after the child's removal, satisfied due process. *Id.* The court said: "The heart of [the father's] procedural due process claim is that he was deprived a post-removal hearing because [the deputy sheriff] did not follow the procedures outlined in [Iowa law]." *Id.* at 713. Here, in contrast to *Swipies*, Smith and Houck followed the procedures outlined in state law; and they did not cause the delay.

The plaintiffs also cite *Whisman v. Rinehart*. There, a deputy juvenile officer seized the plaintiff's child on February 16, 1995. 119 F.3d at 1307. The juvenile officer was notified the next day that the mother was willing to sign custody over to the grandmother, but he took no action to deliver the child to the grandmother. *Id.* Two weeks later, on March 1, 1995, a petition for temporary custody was filed, along with an order that apparently was back-dated to February 17. *Id.* at 1308. The order scheduled a custody hearing for March 15, 1995. *Id.* The plaintiff requested an immediate hearing. *Id.* A hearing was conducted, over the juvenile officer's objection, on March 6,

1995. *Id.* The district court denied the juvenile officer's claim of qualified immunity. The Eighth Circuit affirmed, explaining:

> Even if defendants had a right to take temporary custody of Joel, defendants had a corresponding obligation to provide Michelle and Joel an adequate post-deprivation hearing. *Doe v. Hennepin County*, 858 F.2d 1325, 1329 (8th Cir. 1988). The right to an adequate post-deprivation hearing was clearly established in February of 1995. Defendants scheduled the hearing for March 15, 1995, nearly a month after taking Joel into custody. Further, defendants objected to an earlier hearing, claiming administrative inconvenience. Michelle's and Joel's first opportunity for a due process hearing was seventeen days after Joel was taken into custody. Under the facts of this case, seventeen days was not a prompt hearing.

*Id.* at 1310. As this passage indicates, in *Whisman* the delay was apparently the fault of the defendants. Here, again, the delay was not the fault of Smith or Houck.

The plaintiffs also cite *Brown v. Daniels*, 128 F. App'x 910 (3rd Cir. 2005). There, the child was placed in protective custody without a court order on May 21, 2013, but no post-deprivation proceeding was conducted until July 9, 2013, seven weeks later. *Id.* at 915. There, the complaint alleged that the social worker took the child without a court order, failed to notify the parents of the whereabouts within twenty-four hours, and failed to conduct an informal hearing within seventy-two hours, all in violation of state law. *Id.* at 914. Thus, again, the social worker involved in that protective custody case failed to follow the required procedures and was responsible for the delay in the post-deprivation hearing.

Nothing in the complaint or in the state court records filed in this case creates a reasonable inference that Smith or Houck was at fault for the alleged failure of the circuit court to provide Webb and the Lays with a prompt post-deprivation hearing. The plaintiffs' argument reduces to a form of strict liability: the post-deprivation hearing was not held promptly, so the social workers who were responsible for custody of the children must be held individually liable whether they were at fault

13

or not. The Court has found no support for the proposition that social workers can be held individually liable for alleged constitutional violations for which they were not personally responsible.

The Court did not err in dismissing plaintiffs' claim against Houck for failing to provide a prompt post-deprivation hearing. The Court did err in failing to dismiss Webb's claims against Smith for failure to provide a prompt post-deprivation hearing. Based on the allegations in the first amended complaint and the exhibits filed by the defendants under seal, Smith did her job promptly. The delay in conducting the probable cause hearing for Webb was not Smith's fault.[2]

## IV.

The plaintiffs also complain that the Court raised *sua sponte* the issue of the *Rooker-Feldman* doctrine and argue that it was error for the Court to dismiss the plaintiffs' claims that the seizures of their children violated the First, Fourth, and Fourteenth Amendments. Document #39 at 3, ¶ 6. They allege that their children were taken into custody by DHS without probable cause. The Court previously held that these allegations were barred by the *Rooker-Feldman* doctrine because they depend on overturning the holdings of the state courts that probable cause existed at the time the children were taken into custody. Document #34 at 9-10. In the motion to amend or alter the judgment, the plaintiffs reiterate their allegations that the defendants lied during the state court proceedings: "Given that the initiation of judicial proceedings were corrupt and subsequent proceedings as well, which is the source of her injury, Rooker-Feldman should not apply." Document #40 at 11.

---

[2] The plaintiffs do not argue that Smith and Houck should have returned the children when the circuit court failed to conduct a hearing promptly, even though in both cases more than seventy-two hours elapsed before an emergency order was entered.

14

The plaintiffs rely on an unpublished California Court of Appeals opinion, dubbing it a "landmark social-worker liability case." Document #4- at 11-12 (citing *Fogarty-Hardwick v. Cnty. of Orange*, 2010 WL 2354383 (Cal. Ct. App. June 14, 2010)). The case did not involve the *Rooker-Feldman* doctrine. A mother sued the county and two social workers in state court, alleging that the social workers lied, falsified evidence, and suppressed exculpatory evidence. The falsehoods were material to the dependency court's decision to remove the mother's two children from her custody. The county urged the court to give collateral estoppel effect to the juvenile court's decision, but the court refused based on the unique policy concerns that arise in juvenile court, like the "intentionally fluid interim decision-making" and maintaining a focus on the child's well-being. That decision does not change the analysis under the *Rooker-Feldman* doctrine.

The plaintiffs also argue that *Rooker-Feldman* cannot apply because *ex parte* orders for emergency custody are not final, appealable orders and because no adjudication orders were entered in their cases. Document #55 at 8. The Court clearly explained in its opinion that *ex parte* orders for emergency custody are not final, appealable orders under Arkansas Supreme Court Rule 6-9(a). Document #34 at 8. Based on the amended complaint, the Court found that the juvenile court entered its adjudication order in Webb's case on July 26, 2017, and the juvenile court entered its adjudication order in the Lays' case on May 12, 2017. *Id*. at 8-9. An adjudication order in a child custody case is a final appealable order. Ark. R. App. P. 2(c)(3)(A). Now, based on the court records the defendants attached to their response, the plaintiffs argue that there were no final, appealable adjudication orders. Document #55 at 8-9.

The plaintiffs conflate two separate *Rooker-Feldman* requirements: whether the state court proceedings are complete and whether the plaintiffs had a reasonable opportunity to present their

15

claims in an earlier state proceedings. *See Dornheim v. Sholes*, 430 F.3d 919, 923 (8th Cir. 2005); *Niere v. St. Louis Cnty., Mo.*, 305 F.3d 834, 837 (8th Cir. 2002). Even considering the juvenile court record and the plaintiffs' assertions, the state court proceedings are complete. On October 9, 2017, the circuit court granted the state's motion for voluntary dismissal in Webb's case pursuant to Arkansas Rule of Civil Procedure 41 and closed the case. The Lays' case was dismissed on October 4, 2017. These orders are not adjudications on the merits: an "order granting nonsuit is not a final order *for purposes of appeal*." *See Beverly Enters.-Ark., Inc. v. Hillier*, 341 Ark. 1, 14 S.W.3d 487 (2000) (emphasis added).

*Rooker-Feldman* requires only that the state proceedings to have ended; state proceedings have not ended for *Rooker-Feldman* purposes when an appeal from the state court judgment remains pending at the time the plaintiff commences the federal court action. *See Dornheim*, 430 F.3d at 924 ("At the time that [the plaintiffs] commenced this federal action, the state court adjudication was not complete" because the appeal remained pending before the Supreme Court of North Dakota). State court proceedings have ended for *Rooker-Feldman* purposes when "the state court 'finally resolved' the claims." *See Robins v. Ritchie*, 631 F.3d 919, 927 (8th Cir. 2011). Here, it is undisputed that the state court proceedings in both the Webb case and the Lay case were concluded before this action was commenced. The dismissal order in the Webb case was entered on October 10, 2017. Webb filed her complaint in this action on October 13, 2017. The proceedings against the Lays in state court were terminated on October 5, 2017. The Lays were added as plaintiffs in this action in the first amended complaint, which was filed on December 20, 2017.

Even though the probable cause orders and the voluntary-dismissal orders were not appealable, the plaintiffs had a reasonable opportunity to present their claims—that the state seized

16

their children without probable cause—in the earlier state court proceedings. *Cf. Niere*, 305 F.3d at 837 (finding that petitioners lacked a reasonable opportunity to litigate their claims in state court because they were uninvolved with earlier state court proceedings). There is no requirement that plaintiffs have had the opportunity to appeal the state court decision at issue in order to have had a reasonable opportunity to present their claims. *Cf. Skit Int'l, Ltd. v. DAC Tech. of Ark., Inc.*, 487 F.3d 1154, 1158 (8th Cir. 2007). The state courts held hearings to determine whether probable cause existed. Webb and the Lays were represented by counsel at their respective probable cause hearings. The circuit court in each case found that probable cause existed at the time of removal. Nothing is alleged to indicate that either Webb was or the Lays were deprived of an opportunity to present their claims in these proceedings.

It is true that the Supreme Court has construed the *Rooker-Feldman* doctrine narrowly and warned the lower courts that a broad construction is inappropriate. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). *Rooker-Feldman* "does not 'stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court.'" *Banks v. Slay*, 789 F.3d 919, 922 (8th Cir. 2015) (quoting *Exxon*, at 284-93, 125 S. Ct. 1517). In the state court proceedings at issue here, however, the circuit courts specifically found that probable cause existed for the state to remove the children from the plaintiffs' custody.

The Court is without jurisdiction to overturn the circuit courts' findings on probable cause. *See Glover v. Mo. Child Support Enforcement Agency*, No. 4:15CV00022, 2016 WL 427943 (E.D. Mo. Feb. 4, 2016) (applying *Rooker-Feldman* where plaintiff asked the Court to review and reject the child-support judgments of state courts); *see also Fikrou v. Montgomery Cty. Office of Child*

17

*Support Enf't Div.*, No. 215-CV-01297-GMN-NJK, 2015 WL 6539767, at *3 (D. Nev. Oct. 28, 2015) (applying *Rooker-Feldman* to plaintiff's claims against state child support enforcement agency officials based upon the allegation that child support orders were entered upon "fraud on the court"). The plaintiffs' claims that their children were seized without probable cause in violation of due process are inextricably intertwined with the state court decisions that probable cause existed at the time of the removals. *See Simes v. Huckabee*, 354 F.3d 823, 827 (8th Cir. 2004). "Federal district courts [ ] may not 'exercise jurisdiction over general constitutional claims that are 'inextricably intertwined' with specific claims already adjudicated in state court.'" *Ballinger v. Culotta*, 322 F.3d 546, 548-49 (8th Cir. 2003) (holding that plaintiff's claim that state court judge unconstitutionally awarded custody of child to grandparents was barred by *Rooker-Feldman* doctrine because the relief requested would effectively reverse the state court decision or void its ruling). Therefore, the Court did not err in holding that the *Rooker-Feldman* doctrine barred the plaintiffs' constitutional claims, other than the procedural due process claims. Document #34 at 10.

## V.

As noted above, the plaintiffs' claims against Martin and Gillespie are for inadequate training and supervision and for allowing *de facto* policies that led to the matters about which the plaintiffs complain in this case. Because the Court has found no underlying constitutional violation, Martin and Gillespie cannot be liable for inadequate supervision or for improper policies. *Brockington v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007); *Reynolds v. City of Little Rock*, 893 F.2d 1004, 1007 (8th Cir. 1990).

## VI.

The first amended complaint alleges that this Court has "supplemental jurisdiction over Plaintiffs' state claims under 28 U.S.C. § 1367." Document #12 at 2. It is not apparent what state-law claims are alleged. Nevertheless, because all claims that arise under the laws and constitution of the United States have been dismissed, the Court declines to exercise supplemental jurisdiction over any state-law claims that the plaintiffs have alleged. *See* 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the foregoing reasons, the plaintiffs' motion to amend or alter the judgment and for leave to file a second amended complaint is DENIED. Document #39. The defendants' request for reconsideration of the order insofar as it failed to dismiss the claims of Webb against Smith is GRANTED. For the reasons stated, all of the federal claims of both Katelyn Webb and Jerimey Lay and Tabitha Lay are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over any state-law claims, so any such claims are dismissed without prejudice.

IT IS SO ORDERED this 20th day of June, 2018.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE